NOAH WORRALL, APPELLANT AND RESPONDENT, v. DAVID
MUNN, RESPONDENT AND APPELLANT. (Cross Appeals.)

*Contract—Specific Performance—Waste—Measure of Damages.*

When a Court of Equity decrees the specific performance of a contract for
the conveyance of land, it will proceed to give full and complete relief by
awarding to the Plaintiff the damages which he has sustained by being kept
out of possession, and also the damages by waste committed by the Defend-
ant.

And such damages will be allowed down to the time of the final assessment,
although the litigation may have been prolonged for many years after the
interlocutory decree, which declares the Plaintiff's title to specific performance.
Damages for waste should be ascertained by the value of the wood, timber,
and other property carried away by the Defendant, and interest thereon
should be allowed from the time when the Plaintiff is let into possession of
the premises, and down to the final assessment.

The general rule for the allowance of damages to the Plaintiff for being kept
out of possession is to treat the vendor as trustee of the purchaser in respect
of the land, and accountable for the rents and profits, or value of the use and
occupation ; and the purchaser, if the purchase-money has not been paid, will
be charged with interest. But this rule is not invariable, and its application
will be varied by special circumstances.

When, as in the present case, the value of the land consisted chiefly in valu-
able clay pits thereon, to be made productive by consuming the clay in brick-
making, and the land was of trifling value for any other use, the purchaser,
having paid the purchase-money, should be allowed an annual sum as dama-
ges equal to interest on the purchase-money, and also interest on each annual
sum down to the time of the assessment.

THE Plaintiff, in 1844, filed his bill in Chancery to compel the
specific performance of an agreement for the sale and conveyance
to him of certain land in the county of Rockland. The agree-
ment was made by one David M. Prall, who, after the making of
the agreement, and prior to the filing of the bill, had conveyed
the land to the Defendant Munn—the latter having knowledge
of the prior agreement.

On the 31st of March, 1846, a decree was made in the action
requiring the Defendant to convey to the Plaintiff, requiring the
Plaintiff to pay the purchase price to Prall, with interest from

the date of the agreement, and further directing that it be referred to a master "to ascertain and compute the *amount of damages which the Plaintiff has sustained by reason of his having been kept out of possession of said premises, and by reason of the waste committed by the said Defendant, David Munn.*"

This decree was appealed from by the Defendant, and was affirmed by this Court in 1851.

The reference to ascertain damages then proceeded before a referee (substituted for a master), and in August, 1860, he reported the amount of the damages sustained by the Plaintiff, by reason of having been kept out of possession from 1843 to 1859 inclusive, $6,839.76, and by reason of waste committed, viz., in the years 1844, 1845, 1846, and 1847, $10,786.77.

The former amount being ascertained by finding the sum for which the premises could have been rented, with the privilege of digging clay and sand and manufacturing brick thereon, and allowing to the Plaintiff the *interest* on *those rents* to the date of the report, as damages for the detention, on the ground that, as the privilege of so using the materials for brick-making would, if exercised, have consumed them, and as the detention which prevented such use had at the same time preserved to the Plaintiff the same materials, to be in the future made productive, the injury to the Plaintiff, or effect of the detention, was a mere inability to realize the productive value of the premises (by consuming them) at so early a day as would have been practicable if the contract of sale had been performed according to its terms.

On the coming in of the report it was held by the Supreme Court, at Special Term, that the damages for the detention of the premises were not computed upon the proper rule, and those damages were directed to be computed by allowing to the Plaintiff—not interest on what he might have realized by letting the premises for brick-making, and so by consuming the materials, but interest on the purchase-money itself, the interest upon which had presumptively been a total loss to the purchaser, so long as he was deprived of the use of that which the agreement of sale treated as of equal value, viz., the land sold.

From the judgment entered in conformity with that direction, the Defendant appealed to the General Term, and there, on the 22d May, 1863, the judgment was reversed upon two grounds:

First, that the rule adopted for ascertaining the Plaintiff's damages for being deprived of the possession was erroneous in this, that the only damages allowable were the fair value of the premises for use and occupation for purposes not involving the destruction or consumption of the premises themselves, or of that wherein their value for brick-making consisted; and

Second, that the Plaintiff was not, under the decree, entitled to damages, either for detention or for waste, after the date of the decree of 31st March, 1846, especially as the judgment was joint against the Defendant Prall as well as Munn; and it appeared that Prall, immediately after that decree, tendered a deed, as thereby required, and he ought not, after that time, to be held liable for Munn's separate individual acts.

A further reference was ordered to compute the damages on the basis of the last decision, and such reference being had, the referee reported, April 10, 1866, as damages for the loss of the possession of the premises for two years prior to the date of the decree (1846), fifty dollars per year, that being the value of the use of the premises "for agricultural purposes" ........... $100 00

Interest thereon for twenty years .................... 140 00

                                                        _____

                                                        $240 00

Damages for waste committed by the Defendant Munn
    in 1844 and 1845 (interest being allowed on the value
    of the materials and timber carried off the premises). $5,550 13

                                                        _____

Making in all.................................... $5,790 13

and for this amount judgment for the Plaintiff was entered, and affirmed in the Supreme Court, and both the Plaintiff and the Defendant Munn appealed to this Court.

Meantime, Prall having died, the Plaintiff and the representatives of Prall made such an arrangement of the interest of the latter in the controversy that it is understood to be conceded that

the questions raised on this appeal only affect the rights of the Plaintiff and Munn, as between themselves, and that Prall and his representatives are no longer interested therein.

The Plaintiff insists that the rule of damages for having been kept out of possession is erroneous and inequitable, he having offered to prove that the premises were bought for the purpose of using them in brick-making, and that such purpose and intention were known at the time to the Defendant; and also that the damages for such detention, and for waste committed, should have been ascertained and allowed down to the date of the report, or to the actual surrender of the possession by Munn.

The Defendant, under his appeal, insists that it was erroneous to allow interest on the annual value of the premises, or on the value of the property taken by Munn from the premises in the commission of waste, and that the Plaintiff was not entitled to recover any damages arising after the commencement of the action.

*William Fullerton* for the Plaintiff.

*C. Frost* for the Defendant.

WOODRUFF, J.—It is not claimed on this appeal that when a Court of Equity sustains a bill filed to compel the specific performance of a contract for the conveyance of lands, and decrees such conveyance, it is not within the proper exercise of its jurisdiction, and according to its settled modern practice, to give full and complete relief by awarding to the Plaintiff not only the conveyance to which he is entitled, but also the damages which the Defendant has caused by his culpable refusal and delay in the performance of his contract. These may be ascertained by the Court in any mode which its discretion approves.

The Court might proceed directly with the inquiry, or refer it to a master, or order an issue quantum damnificatus, as seemed most suitable (Story's Eq. Jur., §§ 793–799), and will even prohibit the Plaintiff from proceeding in another Court to collect his damages (Prothero *v.* Phelps, 25 Law J., Ch. 105 ; Reynolds *v* Nelson, 6 Mad. 290 ; Frank *v.* Basnett, 2 Mylne & Keen, 63).

The questions raised on this appeal are :

1st. What is the rule of damages for the delay, the vendor being in the possession of the land ?

2d. Is the vendor liable for deterioration arising from wilful waste committed by himself ?

3d. To what time shall the damages be allowed ?

4th. Shall the vendor be charged with interest on the damages as they arise until final judgment ?

First, what is the rule of damages for the delay in the conveyance of the premises to the Plaintiff, which damages the decree in this case awards to him, or, in the language of such decree, " the damages sustained by reason of being kept out of the possession ? "

The general rule on this subject, as laid down by the elementary writers, and in the adjudged cases, is, that the Court of Equity will, so far as possible, place the parties in the same situation in which they would have been if the contract had been performed according to its terms ; and to that end the vendor will be regarded as trustee of the land for the benefit of the purchaser, and liable to account to him for the rents and profits ; and the purchaser will be treated as trustee of the purchase-money, if not paid, and will be charged with interest thereon (2 Story's Eq. Jur., § 789 ; Fry on Sp. Performance, § 889, and cases cited). And where the vendor is himself in the actual occupation of the premises, he is charged with the value of the use and occupation (Robertson v. Skelton, 12 Beav. 260 ; Dyer v. Hargrave, 10 Ves. 506).

But while this is the general rule, it is not inflexible. A Court of Equity moulds its relief and gives redress according to the circumstances of each case.

Where the purchaser has always been ready to pay, and has kept his money unappropriated, he is excused from the payment of interest (De Visme v. De Visme, 1 McN. & Gordon, 352 ; Regent's Canal Co. v. Ware, 23 Beav. 575).

Where part of the purchase-money had been paid, the Cour sought to effect an equitable result by charging the vendor, not onl with the rents, but with interest, from year to year, upon a cc-

responding portion of such rents (Burton *v.* Todd, 1 Swan. 255).

So where the subject of the purchase was a mill, and the delay of performance arose from the failure of the vendor to show good title, he was charged with the expenses of repairs and of keeping up the mill and machinery until the purchaser could properly be required to take possession (Carrodus *v.* Sharp, 20 Beav. 56).

Some other qualifications apt to this case will be presently noticed. It is, however, clear, that in the endeavor to do equity between the parties, regard must be had to the special circumstances, wherever there are any peculiarities which render the rigid application of any general rule unsatisfactory.

It is clear, in my judgment, that it is the endeavor to apply the general rule to the present case, without any qualification, and to treat the rule of damages as if it had been a question at law, and on an assessment in trespass for mesne profits, that has involved the question in apparent doubt, and wrought to the Plaintiff apparent hardship.

Thus: he has purchased and paid—as required by the decree to pay—$4,500 for the land, and while the use of the money has been presumptively worth $315 per annum, he has been kept out of possession for more than twenty years, and has been permitted to recover, as damages for the loss of possession, $50 a year for two years, and interest thereon—less, in all, than one year's interest on the purchase-money.

It would be a matter of regret, if the rules applicable to the subject are such that a Court of Equity cannot render more equal justice.

The present case is peculiar in two respects, viz.: First, the purchase-money, with the interest thereon, was payable, and was properly decreed to be paid, to the Defendant Prall, the original owner and vendor of the premises, who acquiesced in the decree, and executed a deed, in obedience to its requirements, while the possession was held by the Defendant Munn; and second, the principal value of the land consisted in the deposits of clay,

adapted, by the consumption thereof, to the manufacture of brick upon the premises.

The inapplicability of the general rule above stated to land of this description may be rendered quite apparent by an illustration closely analogous to the present.　E. g., suppose a sale of land of no value for ordinary use, because incapable of cultivation, and entirely unsuited to pasture, and yet, by reason of a bed of valuable ore, of very large value, and for that sole reason sold at a large price.

On a decree for specific performance, shall the purchaser be charged with interest on the purchase-money for the period during which he is kept out of possession, and the vendor pay nothing, because the rents and profits are nothing, for depriving the purchaser of the opportunity of working the mine or ore-bed during the period of delay ?　Or, if the purchase-money has been paid, shall the vendor, who has enjoyed the use of the purchase-money, have the advantage of his own wrong, and make no compensation to the purchaser for his loss of opportunity ?　The answer must be : Not so, unless the rules of equity are so imperfect that such injustice cannot be prevented.

Does it follow that the damages are to be ascertained by inquiring what profits the purchaser could have made by working the mine ?　That question is, in substance, this—Was the referee right, on the first reference in the present case, in inquiring how much the Plaintiff might have received for the privilege of making brick on the land, thereby exhausting the bed of clay, which, in fact, now remains to him to be worked, presumptively with equal benefit, and thereupon allowing to the Plaintiff interest on such possible receipts, from year to year, as damages for the delay ?

This mode of estimating his damages proceeded upon the ground, not that the Plaintiff lost the clay-beds (which constituted the chief value of the land), but that he lost the opportunity of converting them into money so soon as he might perhaps have done if he had obtained the possession when he was entitled thereto.

I find no warrant for any such speculative rule or measure of damages; no case is cited to us, and, I think, it may be safely averred that no case can be found in which such a rule was adopted.

No analogy can be found in any rule of assessment of damages at law.

The rule there is the value of the use, not the profits of the consumption of the property detained, when, in fact, the entire property is restored to the Plaintiff's possession.

True, witnesses may testify that the premises would have supplied a given number of brick kilns; that they would have annually made a stated number of brick, and that the privilege of making so many brick would be worth a sum mentioned; and may add an opinion, that persons could have been found to pay an annual sum named for the privilege. But it is, quite obvious that such evidence is, in its very nature, conjectural, and lacks that element of certainty which ought to determine the extent of liability.

Neither does any rule suggested by cases in equity, or by writers of authority, authorize this mode of measuring damages. Invariably, so far as I have been able to discover, when *loss* of the *use* of the land itself has been made the criterion or *test* of the Plaintiff's damages, it is the value of the use, and not the profits of its exhaustion of whatever it contains of value, that furnishes the rule.

But on the other hand (as in fact already suggested), is the value of the use the only rule or measure of damages? In the case above supposed, and in the case now before us, the value of the use of the land in any mode not involving its consumption, is nothing, or at most very trifling. If it were a ledge of sterile rocks, of no value but for its mine, and yet of very large value for the privilege of exhausting the mine of all that made it valuable, such use, apart from the privilege of mining, would be literally nothing.

If, then, the Plaintiff is not entitled to recover damages computed upon the basis of profits anticipated from consuming the

clay and sand upon the premises, or letting to others that privilege, and, on the other hand, the use of the land for any other purpose would furnish no real indemnity, is there any recognized equitable rule or measure by which injustice can be prevented?

To this I answer : although he may not be compensated for the profits or gains which possibly he might have realized by converting the land or its deposits into money at an earlier day, he may be protected against actual loss. If this be done, the result ought to be satisfactory; and more than this would be to impose a penalty upon the Defendant (who has certainly not realized profits by the detention), which a Court of Equity will not do beyond what indemnity to the Plaintiff requires.

The subject of the sale was peculiar. It has little value for any annual use that does not involve the consumption of that which gives it value. The Plaintiff offered to prove that he purchased for the express purpose of devoting " it to the making of brick, and so converting its contents into money."

Now, suppose the Plaintiff, although he contracted to pay therefor a large sum, had, in fact, paid no part of the purchase-money, and he was now to be put in possession and permitted to carry into effect the purpose for which he bought the property.

He would be completely indemnified against loss by relieving him from the payment of interest.

True, he would fail to realize at so early a day as he anticipated the profits of his bargain, but he has now that chance of profits, and meantime he has had the use of the purchase-money.

In short, the general rule which allows to the vendor the interest, and to the purchaser the rents and profits, failing to apply, because, from the character of the land, there are no rents and profits, or an amount grossly inadequate to a just indemnity, the purchaser is equitably entitled to be indemnified, if any definite and certain mode can be found by which to ascertain it.

Relief from the payment of the interest is in such case palpably the most obvious, as it is the most equitable mode of doing so,—for otherwise the vendor is permitted to profit by his own wrong, and the purchaser compelled to submit to a certain loss.

This is no novel suggestion, nor a new mode of doing equity in such case, but is one of the recognized exceptions to the general rule on the subject. Thus, in Esdaile v. Stephenson (1 Sim. & Stu. 122), it is said by Sir John Leach, Vice-Chancellor : "If the interest is much more than the rents and profits, and it is clearly made out that the delay in completing the contract was occasioned by the vendor, then, to give effect to the general rule, would be to enable the vendor to profit by his own wrong; and the Court, therefore, gives the vendor no interest, but leaves him in possession of the interim rents and profits."

This principle was acted upon by him in Monk v. Huskisson (reported in a note, 4 Russ. 121). And in Jones v. Mudd (4 Russ. 118) the question came distinctly before the Lord Chancellor, and he affirmed the views of the Vice-Chancellor in the case above referred to. To the like effect is Paton v. Rogers (6 Mad. 256), before the same Vice-Chancellor.

And in Burton v. Todd, above cited, Lord Eldon, in a case in which the ordinary rents and profits could alone be regarded as in the contemplation of the purchaser as an inducement to the purchase, showed the inapplicability of the general rule, where the purchaser had paid a portion of the purchase-money, and provided indemnity to him by charging the vendor with the interest upon a corresponding portion of the rents and profits.

The principle of these cases furnishes a clear and precise guide to the true equity between the present parties. If the money was in the hands of the Plaintiff, to be paid over to the Defendant, he would not be chargeable with interest. The use of the money during the time that he has been kept out of possession by the Defendant would have been enjoyed by him, and the Defendant would have left to him the rents and profits, or the use and occupation, while thus wrongfully retaining the possession. But it is one of the peculiarities of this case that the purchase-money and interest were due to the Defendant Prall, and have been paid while the Defendant Munn was in possession; and during the period of the litigation, down to 1859 at least, he kept the Plaintiff out of possession.

The Plaintiff has lost the interest on the purchase-money, and the nature of the property is such that there can be no measure of damages founded on the rents and profits, or the value of the use of the premises, which furnishes any indemnity.

Within the principle of the cases referred to, and, as I think, in most just conformity to reason and equity, the Defendant should be charged with the amount of that interest, as damages, down to the time when the Plaintiff was let into possession.

. Second. That in order to avoid multiplicity of suits, it was proper to decree compensation for waste committed by the Appellant, does not appear to be questioned.

No exception to the report of the referee, nor to the interlocutory decree directing the allowance, appears.

To proceed with the cause to the rendering of full and complete justice between the parties, and, if possible, put an end to the litigation, is the familiar practice of the Court (Story's Eq. Jur. §§ 794–799, and cases above referred to).

Third. To what time ought the damages to be computed and allowed ?

. I. As to the damages for keeping the Plaintiff out of possession.

I have no hesitation on this point. They should be allowed down to the time when the Defendant surrendered possession ; or, if he be in possession at the time of the assessment, then to the time of making the allowance.

In this case the Supreme Court have deemed it proper to allow the computation by the referee down to the date of the interlocutory decree only. I do not perceive any just reason for this. It was certainly not intended to furnish the Defendant a premium for protracting the litigation, concerning the damages, through many years.

If it was proper to allow the damages accruing after the commencement of the suit, it was proper to allow them down to the time when they were assessed.

This is true, even at law, in those cases in which damages arising after suit brought may be t ken into view. The time of the assessment will be the time to w'ich they are allowed.

No reason can be assigned for not allowing to the purchaser his damages by reason of being kept out of possession, when, according to the general rule above stated, he is bound to pay interest on the purchase-money down to the final decree and its actual execution.

II. As to the damages for waste committed pendente lite.

They also have been allowed down to the interlocutory decree.

Why not then down to the time of the assessment? The suggestion that they are not within any issue between the parties begs the question, and assumes that such damages are not within the exercise of the jurisdiction of the Court in such cases, which is the very question. If it is according to the practice of a Court of Equity, and is reasonable and just, that a Defendant so unlawfully withholding possession and committing waste, shall be compelled, not only to convey, but pay all damages down to the time he surrendered the possession, then those damages are within the proper range of inquiry, and he is for that reason perfectly apprised, from the moment a bill is filed, that for those damages he can be required to respond in that suit.

The commission of waste does not, in respect to this particular question, differ from any bad management and deterioration thence ensuing, of which an example is found in Ferguson v. Tadman, and Ruck v. Tadman (1 Simons, 530), where the purchaser, by agreement of purchase made in May, 1818, was entitled to possession at Michaelmas following, and being refused, filed his bill immediately (November, 1818) to enforce performance of the contract, which was decreed, and in September, 1823, the purchaser obtained the possession, and it was shown that the estate had become much deteriorated by mismanagement and neglect by the default of the vendors. The amount was ascertained down to the time when the purchaser was let into possession, and was allowed to him. This period was very nearly the precise period during which the suit was pending. So also, in Foster v. Deacon. (3 Mad. 394), by the agreement made in October, 1815, the purchaser was to have the rents and profits from Michaelmas follow-

ing; the vendor, however, remained in possession, and in 1818 a decree was obtained for a specific performance, and, on motion, it was referred to a master to inquire what allowance should be made for deterioration. The Vice-Chancellor says: "If there had been wilful waste by the vendor, I should have had no hesitation in making him answer for the same . . . .; but it is waste occasioned by negligence." He then shows the liability of the vendor, as the delay was by his fault, and his liability for the negligence of his tenant, and referred it to a master to inquire into the amount of deterioration by unhusband-like conduct and mismanagement to be allowed to the purchaser.

The case of Nelson v. Bridges (2 Beavan, 239) is also entirely in point to the rule that the Court will in the same suit give compensation where the vendor has, pendente lite, abstracted stone or minerals which formed a prominent part of the value of the lands sold.

There, it is true, the Court deemed a supplemental bill necessary in order to bring the matter under adjudication, but it was not deemed doubtful that it was a proper subject of decree for compensation or allowance in the suit; and it was in express terms declared that if it had been known to the Court, at the first hearing, the Court would have put, in a due course of investigation, the question of the amount of compensation to be made to the Plaintiff.

In the other two cases above referred to, the motion being made in due season, a reference was ordered.

In the last case a supplemental bill being filed, an issue quantum damnificatus was awarded.

In the present case the subject was before the Court at the first hearing. The decree awarded compensation in damages for the waste. There was no ground whatever for stopping the inquiry at that date. The cases above referred to show that the Plaintiff is entitled to be allowed for all damages down to the time when he is let into possession. And the interlocutory decree, in the present case, contemplated an inquiry, not exclusively into the past, but directed an inquiry which, to the referee, was to be a

present inquiry—How much, at the date of his report, have the premises been damaged by the Defendant's waste?

Fourth. The remaining question is: Shall the vendor be charged with interest upon the damages?

This question must also be considered in reference to the nature and ground of the damages awarded.

1st. The damages caused by the mere fact that the Plaintiff has been kept out of possession.

These damages are a substitute for the rents and profits which the purchaser was entitled to receive and enjoy.

Now, if this case had not been peculiar in the particulars above adverted to, and the decree was therefore that the Defendant account for and pay over the rents and profits received by him, it would, I think, hardly be doubted that the vendor should be charged with interest.

Surely a Court of Equity should not be less just in this respect than a Court of Law; and in Jackson *v.* Wood (24 Wend. 443) it was held that in ascertaining the mesne profits to be allowed to a Plaintiff in ejectment, the Plaintiff was not only entitled to interest, but the premises being situated in the city of New York, where rents are payable at quarter-days, it was proper to compute the interest upon the rents from each usual quarter-day to the time of the assessment.

Now, it is not material to this question that the measure of damages in this case is not rents, but a compensation in lieu of rents, viz., a sum annually equal to the interest on the purchase-money paid. This is allowed as damages. It is just what the Plaintiff paid out from year to year. It is allowed, *not as interest*, but as annually lost by being kept out of possession—allowed, because, from the peculiar circumstances of the case, there is no other equitable and yet safe rule of indemnity.

Interest should therefore be allowed from the end of each year; not compound interest, but simple interest to the date of the report.

2d. The damages caused by waste are not within any such rule. The *actual* amount of *depreciation* caused by the waste—to wit, the value of the timber, clay, &c., taken away—is to be allowed.

8

But that being allowed, the purchaser obtains the full value of the premises purchased, and all just indemnity.

Thus, first, he obtains possession of the premises. Second, he obtains an assessment in amount equal to the deterioration.

These place him in the same situation in which he would be if the premises had not deteriorated when he obtained possession.

Then, finally, he has, as further damages, what he is deemed to have lost by being kept out of such possession.

The result is, that he would be more than indemnified if he was permitted to add interest on the deterioration.

He is, however, entitled to interest as damages on that deterioration from the time when he was let into possession, because, at that time, all allowance for damages arising from being kept out of possession ceases, and because as to the amount of deterioration caused by waste, he can *never* be let into possession.

The result is, that, for the time the Plaintiff was kept out of possession, he should be allowed, as damages, his loss—to wit, an annual sum equal to the interest on the purchase-money.

He should be allowed the damages sustained by the waste committed by the Defendant—i. e., the value of the property carried away.

These amounts should be allowed down to the time when the Plaintiff was let into the possession.

Interest should be allowed in ascertaining the damages caused by the delay in admitting the Plaintiff into possession, computed on each annual amount from the end of each year down to the time of the assessment or report.

Interest should only be allowed, in estimating the damages caused by waste, from the time when the Plaintiff was let into possession; and on the aggregate amount of such depreciation, interest may properly be allowed down to the time of such assessment or report of the referee.

The judgment must therefore be reversed; and as this reversal in part sustains the Plaintiff's appeal, and in part that of the Defendant, it is proper that the reversal should be without costs to either party.

The case should therefore be remitted, to have the damages ascertained in conformity with these views.

WOODRUFF, J., to settle the decree.

All reverse.

JOEL TIFFANY,
State Reporter.