Judgment of General Term reversed, and judgment of Special Term affirmed.

---

EDWARD SELLECK, Appellant, *against* JACOB B. TALLMAN, Respondent.

(Decided June 5th, 1882.)

Upon judgment in favor of plaintiff in an action for the specific performance of a contract for the sale of land, which was purchased by him for the purpose of improvement, and from which no rent or profit could possibly be derived otherwise than by improvement, where it appears that plaintiff, by being kept out of possession by defendant, has sustained large damages, though such damages are not capable of definite ascertainment, no interest should be charged plaintiff upon the purchase money, and defendant should be charged with all interest and taxes accruing prior to the delivery of the deed. And no allowance should be made to defendant for an increase in the value of the land.

APPEAL from an order of this court at Special Term sustaining exceptions to the report of a referee.

The facts are stated in the following opinion of HAMILTON COLE, Esq., referee, dated February 27th, 1882:

"On the 19th day of February, 1879, the plaintiff and

defendant entered into a contract for the purchase and sale of real estate. Upon the execution of the contract the plaintiff paid $1,500. He was to pay upon the delivery of the deed an additional $1,500, assume mortgages then upon the property amounting to $34,500, and for the balance of the purchase money, $37,500, give his own bond and mortgage, payable in one year. The defendant refused to complete his contract. The plaintiff brought his action for specific performance. Upon the trial at Special Term the complaint was dismissed. The General Term reversed this judgment and ordered a new trial. The defendant appealed from this order to the Court of Appeals. That court affirmed the order appealed from and ordered judgment absolute for the plaintiff.

" The case now comes before me upon a reference to take proof and report to the court what damages, if any, the plaintiff has suffered by reason of the refusal of the defendant to complete his contract, to adjust the equities between the parties and to report a form of decree.

" As to the question of damages, I have no doubt but that the plaintiff has suffered very considerable damages by reason of this delay. He intended to build. There is no reason to doubt his ability to do so. He had gone so far as to obtain estimates for the excavation. The prices of building materials and labor have largely increased since 1879. But the plaintiff had no contracts for the performance of this work or any part of it. The amount of excavation was merely estimated. Any sum which might be given as damages in this case would necessarily depend upon many purely speculative elements, and this cannot be allowed in actions for breach of contract. In such actions the amount of damages must be proved with reasonable certainty, and cannot be estimated from probabilities simply.

" The defendant has paid the interest upon the $34,500 mortgages. The taxes have not been paid for the years 1879, 1880 and 1881. The property has produced no rent or profits. How, then, are the equities between the parties. to be adjusted ?

" It has been frequently said in cases of this kind that the vendor is trustee for the vendee; that as such trustee he is bound to account for all rents and profits and entitled to be credited with necessary disbursements, and where the rents and profits exceed the disbursements such a rule works equity. On the one hand the vendor cannot be allowed to profit by his own wrong, and on the other hand the vendee, if he claims the profits of the estate, must also bear the burdens. But where the disbursements exceed the rents and profits, I think a very different rule should be applied. The courts have likened the position of the vendor in cases of this kind to that of a trustee, but it would not be correct to argue from this that the vendor is under all circumstances entitled to the benefit of the same rules as are applied to trustees lawfully in possession of property, and is therefore entitled to be credited with all disbursements made to preserve it. He is at best a trustee in his own wrong, and the vendee may insist upon enforcing any rights which may arise from this relation, or he may entirely ignore this relation and treat the vendor simply as a wrongdoer.

" The defendant has adjourned the completion of his contract for three years.. During that time he has kept the plaintiff out of possession. It has finally been decided that he must complete his contract. It was defendant's duty to keep himself in a position where he could complete his contract if he was obliged to do so. To do this he has been obliged to pay out certain moneys; such payments were made necessary by his own wrong, and the vendee should not be compelled to repay them to the vendor. It is true that these payments must have been made by the vendee if the contract had been completed, but he would then have had possession of the property, and to say that he must repay these sums to the vendor, because if the contract had been carried out the vendee would have been obliged to pay them in the first instance, is practically to enforce the provisions of the contract as against the innocent party and not against the party in the wrong.

"Such an obligation cannot arise out of the contract, for the vendee has not had what he bargained for—possession. It arises, if at all, out of some supposed equity, and I can see no equity in such a ruling.

"It may be considered well settled that when the purchase money is to be paid in cash, and the vendor refuses to perform, and is afterwards compelled to do so, and there are no rents and profits, the vendee is not to be charged interest upon the purchase money. If the payments are to be made by the assumption of mortgages, I see no reason why this change in mode of payment should operate to charge the vendee with interest upon the mortgages. In this case the vendee was also to execute another mortgage for $37,500. If he is to be charged interest upon the $34,500 mortgages upon the ground that he would have been obliged to pay them if the contract had been carried out, why should he not be charged interest upon $37,500 mortgage which he would have been obliged to make and pay interest upon if the contract had been carried out; and if we concede this we are brought into the anomalous position that if the purchaser is to pay cash he is not to be charged with interest, but if he is to pay by making a mortgage he is to pay interest upon such mortgage. It has been said that the vendee having had the use of the purchase money ought to pay the necessary expenditures upon the property. It may be assumed that the vendee is practically deprived of the use of the purchase money when he is obliged to keep it ready at all times so that he may perform his contract when called upon. But however this may be, I do not see that the vendor should be entitled directly or indirectly to the profits of money which he has refused to receive, and he is allowed indirectly to benefit by such profits, if on account of their receipt by the vendee he is entitled to charge the vendee with the disbursements made upon the property.

"The fact that the property in question has largely appreciated in value has no bearing whatever upon the questions involved here. It is not suggested, I believe, that such

appreciation was caused by the defendant's refusal to complete his contract.

"In my opinion the proper disposition of this matter would be: the defendant to deliver the deed called for by the contract, and the plaintiff to pay the sum of $1,500 in cash, assume the mortgages for $34,500 upon the property and make his own bond and mortgage for $37,500 payable in one year from the date of the delivery of the deed.

"Such seem to me to be the conclusions to be arrived at upon principle, and on examination of the following cases, viz: *Stevenson* v. *Maxwell* (2 Sand. Ch. 302); *Worrall* v. *Munn* (38 N. Y. 145); *King* v. *Ruckman* (24 N. J. Eq. 556); *Carrodus* v. *Sharp* (20 Beav. 56).

"The case of *Duffy* v. *Donovan*, (52 N. Y. 634), seems to lay down a different rule. It is reported in memorandum only. An inspection of the papers on appeal shows that the cases which seem to establish the principle before laid down were not called to the attention of the court. I do not think the rule there laid down an equitable one to follow in the present case, and each case of this general character must of course depend upon its own particular facts.

"I have reported however all the facts in the case so that the court may change the form of the decree to conform to *Duffy* v. *Donovan*, if it feel bound by that decision.

"I do not think the matter of costs and allowance were referred to me, and I, therefore, leave those questions to be decided by the court."

The referee having reported in accordance with the foregoing opinion, the defendant filed exceptions to the report. The plaintiff moved to confirm the report of the referee, upon which motion the following opinion was rendered at Special Term, April, 1882:

BEACH, J.—My opinion upon the equities of the parties to this action, coincides with the one expressed by the learned referee. Had the entire purchase money been payable in cash, the property being unproductive, the vendee would not be chargeable with interest (*Worrall* v. *Munn*,

38 N. Y. 137; *Stevenson* v. *Maxwell*, 2 Sand. Ch. 302). I can conceive no reason why the circumstances that a portion of the purchase money was to consist of an assumption of the outstanding mortgage should modify the rule, so as to charge him with the payment of interest thereon, during the time he has been wrongfully deprived of title and possession. But the case of *Duffy* v. *Donovan* (52 N. Y. 634), seems entirely analogous with the one at bar. It certainly holds a different principle and is obligatory on this court. Under it the defendant must be credited with taxes he has paid and interest paid by him upon the incumbrances which the plaintiff was to assume as part of the purchase price.

In my opinion the plaintiff is entitled to his costs and an additional allowance of one thousand dollars.

Upon this decision an order was entered sustaining in part the exceptions of the defendant. From the order the plaintiff appealed.

*Luther R. Marsh*, for appellant.

*William Allan*, for respondent.

VAN BRUNT, J.—It is difficult to add much in the way of argument to that which has been suggested by the learned referee in his opinion upon the decision of this case.

The learned judge before whom the confirmation of the referee's report came for hearing, felt the force of the argument used by the referee, and the hardships of the case in respect to the plaintiff, but deemed himself constrained by the decision in the case of *Duffy* v. *Donovan* (52 N. Y. 634), to sustain the exceptions to the referee's report.

An examination of the facts of the case at bar, in connection with the principles enunciated in the case of *Worrall* v. *Munn* (38 N. Y. 137), seem to me to clearly distinguish it from the case of *Duffy* v. *Donovan*. The principle is clearly recognized in the case of *Worrall* v. *Munn* that in the endeavor to do equity between parties in actions of this

nature, regard must be had to the special circumstances wherever there are any peculiarities which render the rigid application of any general rule unsatisfactory. In the case at bar, by the wrongful act of the defendant, the plaintiff in this action has been kept out of the possession of property from which no rent or profit could possibly be derived as it stood, and which could be made to yield a rent and profit only by improvement. The evidence discloses that the lots were bought for the purpose of improvement; that preparations were made for the erection of buildings thereon, in order that a return might be derived therefrom; and under these circumstances to make the plaintiff pay the interest upon the purchase price when he was deprived of the only means of making them yield an income, seems to be the grossest injustice, and to bring the case precisely within the principle laid down in the case of *Worrall* v. *Munn*, and the cases there cited. The case of *Duffy* v. *Donovan* was decided in the way in which it was expressly upon the ground that the court could not assume, without proof, that the possession of the premises would have been of any value to the plaintiff. In the case at bar the evidence shows (as has already been said) an intention on the part of the purchaser to immediately improve. The evidence also shows that because of this litigation he has not been able to make the improvements contemplated, and that in the meantime building materials have advanced from twenty-five to forty per cent.: in other words, that at the time that he was enabled to obtain possession under the decree in this action, it would cost him from twenty-five to forty per cent. more, to make the lots return an income from the money invested in their purchase, than it would have done had not the defendant in this action kept him wrongfully out of possession. This is a clear showing that the possession of the lots at that time would have been of value to the plaintiff, and takes the case out of the rule as laid down in the case of *Duffy* v. *Donovan.*.

It has been suggested, that in view of the finding of the referee that there are no damages capable of definite ascer-

tainment proved before him, sustained by the plaintiff by reason of the refusal of the defendant to perform the agreement, we cannot find that the plaintiff has been damaged by the wrongful act of the defendant. The referee does not find that the plaintiff has not sustained damages by reason of the refusal of the defendant to complete, but that such damages are not capable of definite ascertainment—a very different thing from a finding that no damages have been sustained.

The evidence shows that large damages have been sustained, but owing to the very nature of the case they could not be proved with definiteness, and for that reason it was entirely equitable to charge the defendant with the duty of conveying the property at the date of the delivery of the deed free from all incumbrance, except such as are mentioned in the contract of sale, he being charged with all interest and taxes which have accrued prior to such delivery — these damages being definite and certain. Even if such evidence had not been offered as to the increase in the value of building materials, and the case showed that the lots were bought for improvement, and that was the only way in which a rent and profit might be derived therefrom, and that the defendant by his wrongful acts prevented such improvements by which rent and profit might be derived, the same rule would necessarily apply.

It is an elementary rule of equity that a wrongdoer cannot take advantage of his own wrong, and although as a general rule the vendor will be regarded as trustee of the land for the benefit of the purchaser, and liable to account to him for the rent and profits, and the purchaser will be treated as trustee of the purchase money, if not paid, and will be charged with interest thereon, yet such a rule cannot apply to the case where the vendor, by his wrongful act, prevents the derival of any rents and profits from the land sold.

It is urged that the evidence in the case at bar shows that the land largely increased in value during the time that

this litigation was in progress, and that that is a profit which the purchaser has received.

I fail, however, to comprehend how an increase in the market value of the trust estate can in any way be considered as part of the rents and profits of said estate. Certainly if real estate is left to a trustee, with a power of changing the investment, and the rents, issues and profits left to a *cestui que trust,* such *cestui que trust* cannot claim, in case of a change of investment, any enhanced market value of the land in which the trust fund has been invested, any more than the trustee can claim that any depreciation in the market value of the lands in which the trust fund has been invested can be deducted from the income derived therefrom, in order to keep the trust fund intact.

In the case at bar the defendant by his wrong having deprived the plaintiff of putting the premises to that use from which rents and profits might be derived, certainly cannot claim that the plaintiff should pay interest upon the purchase price.

In the case of *Carrodus* v. *Sharp* (20 Beav. 56) where the subject of the purchase was a mill, and the delay of performance arose from the failure of the vendor to show good title, he was charged with the expense of repairs, and keeping up the mill and machinery until the purchaser could properly be required to take possession, which illustrates the principle which has been contended for above.

It does not seem necessary to discuss the questions involved upon this appeal further. The distinction between the case at bar and the case of *Duffy* v. *Donovan* seems to be clear, and the principles upon which the case of *Worrall* v. *Munn* was decided are distinctly applicable to the facts exhibited in the case at bar.

The order of the Special Term should be reversed, and the report of the referee confirmed, with costs.

CHARLES P. DALY, Ch. J., and J. F. DALY, J. concurred.

Order reversed, and report of referee confirmed, with costs.