Reed, J.,
delivered the opinion of the court.
The first question to be determined is whether the decree of the district court is sufficiently broad to cover the contract of the parties as construed in and required by the supreme *237 court. The subject-matter of the contract of lease and the extent and area of the property cannot be misunderstood.
The public, published offer to lease, made by the company was as follows : “ Bids will be received at the office of the Justice Mining Company, up to noon on March 18th, 1889, for lease or leases on the properties of the Justice Mining Company, consisting of the Justice, Marlin, Monte Cristo and Western Union, situated in Tourtelotte Park, and consisting of 26.8 acres.”
The language of the supreme court, 16 Colo. 428 et seq., is as follows : “ The question is comparatively free from embarrassment. The offer of defendants to lease by its terms contained the entire mining property ; the respective claims were named, and their aggregate is given as twenty-six and eight-tenths acres. The offer of plaintiff was for the entire property. No lease of the entire mining property was ever tendered; the ‘ Crowe shaft ’ with surface ground was excepted and reserved for a part of the term. It is conceded that it had at the time of the contract been leased to other parties. It is claimed by defendants that the fact was known to plaintiff at the time of making the contract. This fact cannot prevail as a defense. The knowledge on the part of plaintiff, if it existed, would not relieve defendants from the necessity of complying with their contract. It is also contended that the suit could not be maintained because of the inability of defendants to perform by reason of having leased the Crowe shaft previous to the contract with plaintiff. It appears that, between the date of the advertisement for bids and the awarding of lease to plaintiff, defendants had leased part of the property to other parties, and had also leased the boarding house used with the property. It would be sufficient answer to this contention to say that, having already leased to other parties, the exception and reservation of those portions should have been made at the time of making the contract with the plaintiff. Another sufficient reason why it cannot prevail lies in the fact that plaintiff offered to adjust the matter by receiving the rent which was to be paid *238 to the defendants, which offer was refused. The law is well settled that a lessor who cannot fully comply with his contract will not be allowed to set up his own inability to perform as a defense when the lessee is willing to take what can be demised, and compensation for the balance. See Pom. Spec. Perf. § 388, and cases cited.”
It will be observed that one great obstacle to the execution and acceptance of the lease at the time of the contract was that the company, between the time of advertising and making the contract with plaintiff, having disposed of some of the property by lease, was unable to comply.
The supreme court held that plaintiff was entitled to the entire property or to have it adjusted and receive the proceeds or compensation. In other words, the company was held to specific performance of its contract as made.
The decree made fails to conform to the decision of the supreme court. It attempts to compel the plaintiff to accept a lease of “All the Justice Mining Company’s properties as owned by it on the 18th day of March, 1889,” enumerating the lodes, and giving the names. The quantity and parts remaining at that time are not shown or known. Plaintiff was entitled to a decree for a lease of the “Justice, Marlin, Monte Cristo and Western Union * * * consisting of 26.8 acres.” It is ably contended by the defendant in error that the statement of 26.8 acres must be disregarded; that monuments, courses and distances must control as to quantity. Such is, undoubtedly, the law when a discrepancy exists and one must give way, but where there is no discrepancy, the authorities and arguments of counsel can have no place. No discrepancy or error is shown to exist.
In all grants of mineral lands made by the government two fees are granted, one of the lode as principal and one of the surface ground as ancillary; both taken together constitute the “ claim ” which is required by law to be established by courses, distances and monuments; the superficial area is definitely established, and is sold by the acre and fractions of an acre to the purchaser, and unless some error is shown to *239 exist, is the “ claim.” The plaintiff was by the terms of this contract entitled to a lease of the entire four lodes to their full extent as located, and surface ground to the extent of 26.8 acres, or to an adjustment and compensation for such parts as could not be delivered. Hence, the decree is defective in not being as broad as the decision of the supreme court. Ho definite quantity of ground or lodes is decreed to be leased. The quantity is not that contained in the advertisement nor embraced in the contract. By the decree any remnant, remaining on the 18th regardless of the extent, would fulfill its requirements.
It is urged that the court erred in entering a decree for specific, performance without an accounting having been had.
Plaintiff was entitled to the possession of the property after the 18th day of March, 1889; from the time of the commencement of the suit by the plaintiff until the 15th day of April, 1890, when the decree of the district court dismissing the bill was entered, the defendant company was restrained from working and mining the property and selling ore. After such decree it is alleged the defendant entered into the mine, worked it and disposed of the ore, from such date until the 12th day of 'June, 1891, when the final decree was entered, a period of some sixteen months.
The general rule in equity is, that on a decree for specific performance, where there has been delay or change in the quantity, there should be an accounting, prior to the decree of specific performance. See 1 Story’s Eq. Juris., sec. 512, where it is said, “ If there is a trust estate and the cestui que trust comes upon his title to recover the estate, he will be decreed to have the further relief of an account of the rents and profits.” See Worrall v. Munn, 38 N. Y. 137, where it is said: “ The general rule on this subject, as laid down by the elementary writers, and in the adjudged cases, is, that the court of equity will, so far as possible, place the parties in the same situation as they would have been if the contract had been performed according to its terms ; and, to that end, the *240 vendor will be regarded as trustee of the land for the benefit of the purchaser, and liable to account to him for the rents and profits.”
By the terms of the contract and the decree of specific performance, the lease should have borne date the 18th of March, 1889, for the term of eighteen months. At the time of the decree over two years had elapsed; the term having long expired, neither party could comply with the contract; the lessor could not be required to execute a lease of the date of the decree for the term of eighteen months, nor the lessee to accept it, without a new contract.
It is apparent a lessee could not enter the property under a lease made at the date of the decree for the term of eighteen months and also have an accounting for the term it was illegally withheld; by such a course the lessee would have the benefit of two terms instead of one.
It follows that the decree of specific performance was barren, except that it judicially established the rights of the plaintiff and allowed him, by proper proceedings, to require and recover damages for the lapsed term. Before the entry of the final decree, had plaintiff filed a supplemental bill or petition praying an accounting, it would have been the duty of the court to entertain it and proceed to adjust and dispose of the entire matter. The power was inherent in the court and should have been exercised to end the controversy and prevent a multiplicity of suits. No supplemental bill or petition rvas filed before the final decree, which was entered on June 11th. On August 21st a petition was filed and denied by the court, and very properly; the decree provided for a lease running eighteen months from the 22d of June, 1891; if executed and accepted, the lease could not have the term and damages for the former term.
A very marked and obvious distinction exists between a decree of specific performance for the conveyance of an estate in fee, and the decree for a lease for a limited time. In the former the vendor is required to convey the title and is liable to account for the use of the property while wrongfully *241 detained, in the latter, if the term expires while the lessor retained the possession, the only remedy of the lessee is for the damages. In this case both court and counsel seem to have been led into a mistake by following the law in regard to the sale of real property.
The court having refused an accounting, the plaintiff was relegated to his action at law for the mesne profits for the expired term.
On the 24th of August, when the court denied an accounting, an exception was taken as shown by the court journal, and error is assigned upon such denial, but such exception is not embraced in the bill of exceptions, consequently could not be a basis upon which error could be predicated under the rules. This, had we seen fit to avail ourselves of it, would have been sufficient to dispose of the question of accounting, but court and counsel having, evidently, fallen into an error in regard to the nature and effect of the decree of specific performance, it was thought necessary to discuss the questions involved, to aid in their solution and as far as possible hasten the final conclusion of the controversy.
In our view of the case it will be unnecessary to remand it to the district court; this court will amend the decree by striking out the following: “ This agreement of lease made and entered into this 22nd day of June A. D. 1891,” and inserting “ This agreement of lease made and entered into this 18th day of March A. D. 1889,” also by striking out, “ All the Justice Mining Company’s properties as owned by it on the 18th day of March A. D. 1889,. consisting of the Justice, Marlin, Monte Cristo and Western Union lode mining claims,” and inserting in its stead, “ The properties of the Justice Mining Company consisting of the Justice, Marlin, Monte Cristo and Western Union, situated in Tourtelotte Park and consisting of 26.8 acres,” all the balance of the decree to stand as entered. All costs since the case was remanded from the supreme to the district court to the present time will be equally divided between the parties.

Modified.