■ A. Romi Cohn, Appellant-Respondent, v Mezzacappa Bros., Inc., Respondent-Appellant.—In an action for specific performance of a contract for the sale of real property, (1) the plaintiff appeals from so much of an order of the Supreme Court, Richmond County (Leone, J.), dated September 16, 1988, as denied his separate motions for summary judgment granting specific performance of the contract and for leave to serve an amended complaint, and (2) the defendant cross-appeals from so much of the same order as denied its cross motion for summary judgment dismissing the complaint.

Ordered that the order is modified, on the law, by deleting the provision thereof denying the plaintiff's motion for summary judgment, and by substituting therefor a provision granting that motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, with costs to the plaintiff, and the matter is remitted to the Supreme Court, Richmond County, for entry of an appropriate judgment.

The record demonstrates as a matter of law that the plaintiff buyer was ready, willing and able to perform his obligations under the contract, even though his tender of performance was excused by the defendant seller's anticipatory breach *(see, Jewell v Rowe,* 119 AD2d 634, 635; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065, 1067). Under these circumstances, and in view of the fact that all title objections have been removed, the plaintiff's motion for summary judgment on his complaint seeking specific performance of the real estate contract dated November 7, 1985, should have been granted *(S.E.S. Importers v Pappalardo,* 53 NY2d 455).

The Supreme Court properly denied the plaintiff's motion for leave to serve an amended complaint. In his proposed amended complaint, the plaintiff added a cause of action seeking loss of profits in the amount of $792,000. In support of this motion, the plaintiff alleged as follows:

"2. Since my complaint was originally served in June, 1986, two major events have occurred which have resulted in great damage to me; viz:

"A. The stock market crash in the fall, 1987 has substantially impaired the market value and salability of new real estate construction *. * *.

"3. The stock market crash in the fall of 1987 has created an atmosphere of fear and uncertainty which has resulted in sharply reduced real estate values and curtailed salability of residential housing on Staten Island.

"4. Plaintiff some two years ago contracted to buy defendant's vacant land, not only to build housing on it but also to provide necessary access to contiguous vacant land owned by him which was also to be used for residential construction.

"5. The defendant's land and the contiguous land was to be used to construct 36 residential units which in the 1986-7 real estate market on Staten Island would sell for $160,000.00 per unit, returning a profit of $40,000.00 per unit to plaintiff. The overall profit would have been $1,440,000.

"6. However, the stock market crash of Fall, 1987 has caused a severe downturn in real estate market values and on prospects of salability which has acted as a two pronged pincer contracting profits. In consequence, the market value sale price of plaintiff's proposed house construction would now be reduced to $143,000.00 per unit while (in order to sell such units) plaintiff would have to substantially increase by $5,000 per unit the cost of advertising and promotion.

"7. The net effect on plaintiff's profits is to reduce them by $22,000.00 per unit or an aggregate loss of profits of $792,000.00."

These allegations are insufficient, as a matter of law to support the proposed amendment. As this court stated in *Freidus v Eisenberg* (123 AD2d 174, 177-178):

"Here, with specific performance granted, the contract is being performed, and the purchaser has not lost the value of the bargain. Although legal damages are therefore inappropriate, equity 'will, so far as possible, place the parties in the same situation as they would have been in if the contract had been performed according to its terms' *(Worrall v Munn, 38*

NY 137, 142; *see, Smith Corp. v Kraushaar,* 249 App Div 789). To achieve that end, the court will award to the purchaser, in addition to specific performance of the contract, such items of damage as naturally flow from the breach, are within the contemplation of the parties, and can be proven to a reasonable degree of certainty * * *.

"Since the plaintiff remained in possession of the property throughout the period of her wrongful failure to convey, the defendant is entitled to the value of the use and occupancy of the property, i.e., its rental value, for that period * * *. The measure of the value of the use and occupancy is the rental value of the property, and not any profits which might be derived from its development *(see, Worrall v Munn,* 38 NY 137, *supra).* In *Worrall,* the value of the property was predicated primarily, if not solely, upon its clay deposits, which the purchaser intended to use to make bricks for a profit. Despite this prospective value, the Court of Appeals denied the purchaser damages for such lost profits and limited his recovery to the value of using the land as it was, which was minimal. Similarly here, while the primary value of the land in question may be for development, the profits which might be derived from such a future use do not constitute the present measure of damages".

Accordingly, the plaintiff's motion for leave to amend the complaint was properly denied *(see, Norman v Ferrara,* 107 AD2d 739). Mangano, J. P., Thompson, Bracken and Rosenblatt, JJ., concur.