## SANDERS *v.* DETLAFF.

1. Vendor and Purchaser—Real Estate Broker—Principal and Agent—Evidence—Sufficiency.

> In a suit for the foreclosure of a land contract, where, in the consummation of the contract, defendant dealt with a real estate agent without having any direct dealings with the vendors, evidence *held,* insufficient to establish that said agent acted exclusively as the agent of defendant.

2. Same— Covenant for Possession — Liability for Breach — Notice of Lease—Estoppel.

> A covenant in a land contract to give the purchaser possession at its date is binding upon the vendors and creates a liability for its breach even if the purchaser knew there was a tenant upon the property, since he had a right to assume, when the contract was made, that the vendors could and would give him possession according to its terms.

3. Same—Tender of Assignment of Lease Not Compliance With Covenant for Possession.

> Vendor's contention that they absolved themselves from liability by tendering, on delivery of the contract, an assignment of the lease to the purchaser with a check for rent collected after the date of the contract and a letter directing the tenant to attorn to the new landlord comes too late, where, on refusal of the purchaser to accept said assignment and demand by him for possession, vendors took steps to comply therewith and gave him belated possession.

4. Same—Liability for Breach of Covenant of Possession Not Extinguished by Belated Compliance.

> Subsequent removal of the obstructing incumbrance and putting the purchaser in possession would not extinguish the right of action or relieve from liability for damages resulting from being kept out of possession in the meantime.

5. SAME—PURCHASER ON CONTRACT NOT ENTITLED TO POSSESSION
   UNLESS SO PROVIDED.

   A contract to sell with deferred payments, and silent as
   to possession, does not give the purchaser right of posses-
   sion until full and final payment is made.

6. SAME—BREACH OF COVENANT FOR POSSESSION—MEASURE OF DAM-
   AGES—RENTAL VALUE.

   The measure of damages for breach of covenant for pos-
   session resulting from an unexpired lease on the premises
   has usually been held, in the absence of special circum-
   stances, to be the fair rental value of the property dur-
   ing the time the purchaser is kept out of possession.

7. SAME—EVIDENCE—RENTAL VALUE.

   While the rent actually being paid under the lease for
   the land for farm purposes was competent evidence, it was
   not necessarily conclusive as to the actual rental value,
   especially where it was immediately available for manu-
   facturing purposes and was bought and sold on that basis.

8. SAME—RENTAL VALUE INTEREST ON PURCHASE PRICE.

   Where there was testimony that the fair rental value was
   the interest on the purchase price for the time the pur-
   chaser was deprived of possession, which is also in accord
   with the general rule, the decree of the court below award-
   ing damages on said basis will not be disturbed on appeal.

Appeal from Wayne; Goff (John H.), J.   Submitted
January 6, 1922.   (Docket No. 44.)   Decided June
5, 1922.

Bill by Fielder Sanders and others against A. J.
Detlaff for an accounting and the foreclosure of a land
contract.   From the decree rendered, all parties ap-
peal.   Affirmed.

*Lloyd L. Axford* and *W. E. Tarsney,* for plaintiffs.

*Stellwagen, MacKay & Wade,* for defendant.

STEERE, J.   This bill was filed June 30, 1920, for
an accounting as to the amount due upon and fore-
closure of a land contract of date October 17, 1919,

for the purchase by defendant from plaintiffs of a piece of real estate called the Griffin farm consisting of 33 and a fraction acres lying near Detroit in Greenfield township, Wayne county, described as E. ½ of W. ½ of S. E. ¼, sec. 30, T. 1 S., R. 11 E., excepting a small portion at the northerly end occupied by the Pere Marquette Railway Company and a parcel previously deeded to the Pennsylvania-Detroit Railroad Company. The purchase price was $118,639.85 of which $25,000 was payable at the date of the contract, with balance in installments of $18,727.97 each year for 5 years thereafter with 6% interest from the date of the contract, payable semi-annually on all sums unpaid. The $25,000 payment was made on or before delivery of the contract. The agreement executed between the parties followed the customary form for land contracts, providing amongst other things that defendant should have possession from date of the contract, pay all taxes against the property thereafter assessed and in case of default in any payment for more than 30 days the entire principal sum should become due and payable. In brief, plaintiffs allege in their bill default by defendant in payment of interest due April 17, 1920, and the taxes due December 1, 1919, which they themselves paid on June 29, 1920, whereby the entire principal sum of the contract became due and payable, asking by reason of such default foreclosure in usual form.

Defendant answering in avoidance and denial, alleged by way of cross-bill that although he was entitled to possession of said premises on the date of the contract according to its terms, plaintiffs withheld possession from him until April 17, 1920, preventing him, because he could not give possession, from completing a profitable sale of a portion of the property and from erecting a large factory on the balance of the land as he had arranged, to his great damage, for which

reasons he asks reformation of the contract by dating the same April 17, 1920, the time when possession was actually obtained by him, making the annual installments fall due on that date of each year, that he be paid or credited by plaintiffs with interest until that time on the $25,000 paid them when the contract was entered into and that he be decreed against plaintiffs his damages sustained by reason of their failure to deliver possession, alleged at a large sum, and for such further relief as may be agreeable to equity and good conscience.

This deal was conducted and consummated through real estate agents without the contracting parties seeing or directly communicating with each other on the subject. The property was in charge of a real estate agency called the James S. Holden Company with which it was listed for sale by plaintiffs who lived in Cleveland, Ohio. Defendant was the head and principal owner of a manufacturing concern engaged in making automobile parts, located on Lafayette avenue, Detroit. It had outgrown its location and defendant was looking for a suitable site on which to build a new factory. Various sites had been called to his attention by different real estate dealers. A real estate agent named Hibbard, at whose office he had previously bought a piece of property, submitted to him two sites, one being the Griffin farm which, owing to expansion of Detroit in that direction and recent location of the Pennsylvania railway line upon a portion of it, had become available and valuable for manufacturing or other business purposes. Defendant was favorably impressed with the location. Some negotiations as to terms between them followed during which Hibbard said he "had that place for sale" for the Holden company, and in reply to an offer by defendant said he would have to see his people. He later returned and declined the offer but submitted a

price which defendant accepted. He then on Hibbard's suggestion gave him a check for $2,500 to "close the deal," payable to the latter's order, and signed a preliminary agreement to purchase. Hibbard produced an abstract of the property which defendant told him to submit to his attorney and if it was all right he would give him the balance of the $25,000 according to the terms agreed upon. A defect in the title pointed out by defendant's attorney was corrected and the contract involved here signed by the respective parties was delivered by Hibbard who indorsed over the $2,500 check previously made to him and defendant gave him a check for $22,500 payable to the Holden company in full of first payment as agreed.

It appears that at the time this contract was entered into there was an outstanding lease upon the property and tenant in possession. The Holden company gave Hibbard that lease assigned to defendant with a letter addressed to the tenant directing him to thereafter pay rent to the new owner, and a check of the Holden company for $70.83 payable to defendant as a refund of rental which it had previously collected. Defendant testified that he knew nothing about this lease until some time after the contract was closed when Hibbard came to him with the check and told him about the lease. He refused to accept the same, insisting that he bought the property clear with right of immediate possession at the date of the contract and wanted it turned over to him clear; that he had negotiated sale of a portion and made tentative plans to erect a factory upon that which he retained, but was prevented by inability to get possession of his property. He thereafter refused to make further payments on the contract until plaintiffs gave him possession. After some controversy plaintiffs instituted proceedings to evict the tenant before a commissioner in defendant's name and, as its attorney stated, "did

forceably eject him," giving defendant possession on May 17, 1920. The trial court granted plaintiffs a decree of foreclosure for the amount due on the contract less interest on the purchase price which accrued between October 17, 1919, the date of the contract, and May 17, 1920, when possession was given. From this decree both parties appealed.

Three propositions are argued by counsel, being the question of Hibbard's agency, effect of the covenant in the contract giving possession of the property from its date, and the measure of damages. As to Hibbard's agency, it is contended by the Holden company for plaintiffs that they dealt with Hibbard as defendant's agent, and from beginning of the transaction in September until some time after it was closed every step in the proceeding in behalf of defendant was taken by Hibbard as his agent; that Hibbard was advised of the existence of the lease early in the negotiations and his knowledge was imputable to his principal; and also before closing the deal defendant visited the occupied property and was put upon inquiry as to what rights the occupant had.

Defendant testified that Hibbard was not his agent but came to him at his office claiming to represent the Holden company which had the property for sale and solicited him to purchase; that he did not employ him but dealt with him as plaintiffs' representative, never knew or recognized him as his agent, nor paid or agreed to pay him for his services. The vice-president of the Holden company admitted Hibbard received compensation from them and they "split their commission with him."

There is no direct evidence in this case that defendant ever hired Hibbard as his agent to transact this business for him. It is conceded that plaintiffs' agency paid him for his services in helping to make the deal. He is not shown to have received or asked

compensation from any other source. Defendant's
testimony is undisputed that he did not employ him,
never agreed to compensate him in any way for his
services, and did not do so, but dealt with him at
arms' length as representative of the agency which
had this property listed for sale. The facts shown are
not convincing that Hibbard acted exclusively as agent
of defendant. Neither are we impressed that his
agency is a controlling factor in this controversy.
Even if defendant knew there was a tenant upon the
property the covenant in plaintiffs' contract to give
possession at its date would be binding upon them and
create a liability for its breach. A vendor can cov-
enant against an existing incumbrance in the nature
of a lease or otherwise, and with such an express
agreement as to possession the purchaser is not put
upon inquiry and called at his peril to exercise dili-
gence by reason of the property being occupied to his
knowledge. *Edwards* v. *Clark*, 83 Mich. 246 (10 L.
R. A. 659) ; *Simons* v. *Diamond Match Co.*, 159 Mich.
241. In the latter case it was conceded plaintiffs'
damages were nominal. Here it is not. Defendant
had a right to assume when the contract was made
that plaintiffs could and would give him possession
according to its terms. When they sought to transfer
the lease of their tenant to him he promptly refused
to accept it. There was no subsequent oral agreement
with him on that subject. Any previous oral agree-
ment could not prevail against the written agreement
between the contracting parties.

Defendant testified that he had from the time the
contract was entered into offered and stood ready to
perform on his part, claiming only that because of
plaintiffs' failure to perform on their part he is en-
titled to have deducted from the payments provided
by said contract the substantial damages sustained
by him through plaintiffs' default in not timely carry-
ing out their agreement relative to possession.

The measure of damages runs with the question of the effect of the written covenant for immediate possession in the land contract. That the lease given by plaintiffs which prevented prompt delivery was an incumbrance is not disputed. It is first urged in their behalf that they absolved themselves from liability by tendering on delivery of the contract an assignment of the lease to defendant with a check for rent collected after the date of the contract and a letter directing the tenant to attorn to the new landlord. If ever of any force that contention comes too late. This tender was refused by defendant and plaintiffs' agent promptly so advised. No such course was provided for in the original agreement or formal written contract which they gave to him. In compliance with it they afterwards gave him belated possession and having ratified the contract as accepted by him now seek to foreclose it in this chancery suit.

Plaintiffs' counsel also urge that only nominal damages are recoverable in actions for breach of covenant where the incumbrance is removed by the grantor without expense or trouble to the grantee, and at most damages cannot exceed the rental value of the premises for the time defendant was kept out of possession. Undoubtedly a right of action at once arose in favor of defendant for nominal damages for breach of covenant when plaintiffs failed to give him possession on his demand after the contract was signed and delivered. Subsequent removal of the obstructing incumbrance and putting defendant in possession would not extinguish the right of action or relieve from liability for damages resulting from being kept out of possession in the meantime.

A contract to sell with deferred payments and silent as to possession does not give the purchaser right of possession until full and final payment is made. Here by special covenant of seizin in fact immediate pos-

session is given, a personal covenant relating to the land which, though not running with it as a covenant real, was essential to its use and enjoyment and a right of more than nominal value.

The measure of damages for breach of covenant resulting from an unexpired lease on the premises has been usually held in the absence of special circumstances to be the fair rental value of the property during the time the purchaser is kept out of possession (7 R. C. L. p. 1183), which plaintiffs contend is evidenced and to be determined by the rental specified in the unexpired lease.

The rent actually being paid while competent evidence is not necessarily conclusive as to the actual rental value. The outstanding lease manifestly was based on a modest rental of the land for farm purposes, while at the time of this transaction it had reached a far greater value for other purposes. Plaintiffs sold it to defendant for approximately $3,500 an acre. Changed conditions had then greatly enhanced its value, rendering it suitable and immediately available for manufacturing and other urban business activities. Plaintiffs sold and defendant bought on that basis. Defendant at once negotiated the sale of a portion which he did not need for his purposes at a much greater price per acre than he paid and prepared to utilize the balance for his own manufacturing purposes. While the fact that the land was bought and about to be used for a particular purpose of which the seller was not advised does not authorize recovery beyond the recognized rule of damages for breach of covenant such testimony, like the price at which it was sold, is competent as bearing upon the general or actual fair rental value of the premises. In *Wetherbee* v. *Bennett*, 2 Allen (Mass.), 428, it is said:

"The fact that an estate can be sold is one of its

elements of value, and is not to be excluded from consideration; though it is not to be considered as a reason for enhancing damages that the purchaser acquired it for a special purpose of selling it again directly."

Plaintiffs' evidence only showed the rent actually paid under the terms of the unexpired lease which during its life constructively evicted defendant and kept him out of the use and enjoyment of the premises.

Defendant showed by the testimony of a real estate agent and dealer named Miller, of 20 years' experience in buying, selling, renting and managing various kinds of real estate in Detroit and vicinity both improved and unimproved, that in his opinion a fair rental value of that property would be 6% on the purchase price or, in this case, for the time possession was withheld.

In *Fritz* v. *Pusey*, 31 Minn. 368 (18 N. W. 94), which involved an outstanding lease, it is said with citation of supporting authority:

"The underlying principle is that the damages should be estimated according to the real injury arising from the existence of the incumbrance, which, in the case supposed, is presumably and ordinarily the value of the use of the premises for the time during which the vendee has been deprived of such use."

Directed to the principle of real injury arising from existence of the incumbrance, it is generally held in cases of breach of covenant for quiet enjoyment that the measure of damages is the consideration paid for the property with interest (7 R. C. L. p. 1179), which by analogy suggests interest on the purchase price of the premises during the time defendant was denied all use, enjoyment, rents and profits from the same as a fair basis for damages within the general rule of the value of the use, or rental value, which also has support in the expert testimony introduced by the defendant.

We find no occasion to disturb the conclusions

reached by the learned trial judge and the decree will stand affirmed.   As both parties appealed, costs will be equally divided between them.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.

The late Justice STONE took no part in this decision.