ELLA FREIDUS, Appellant-Respondent, v DOROTHY EISENBERG, as Trustee in Bankruptcy of TODEM HOMES, INC., Respondent, and GERALD RESNICK, Proposed Intervenor-Appellant.

Second Department, December 31, 1986

## APPEARANCES OF COUNSEL

*Summit Rovins & Feldesman (Stuart A. Summit, Glenn S. Goldstein, Thomas J. Troiano* and *Ira G. Greenberg* of counsel), for appellant-respondent.

*Michael M. Perlman* for proposed intervenor-appellant.

*Miller & Seeger (Israel G. Seeger* of counsel), for respondent.

### OPINION OF THE COURT

LAZER, J. P.

At primary issue is the amount of damages to which the defendant is entitled as a result of the plaintiff's wrongful failure to convey real property. On June 10, 1969, the plaintiff entered into two contracts of sale with Todem Homes, Inc. (hereinafter Todem Homes). Under the first of those contracts, the plaintiff purchased a 20-acre parcel in the Village of Lloyd Harbor for $200,000. The parcel was improved with a single-family residence, but was, for the most part, heavily wooded terrain, with hills and ravine. The second contract gave Todem Homes the right to repurchase 17 of the unimproved acres, within a period of 30 months, for $40,000.

After the sale of the 20-acre parcel had been consummated, disputes arose concerning the rights and obligations of Todem

Homes under the option contract, and the resulting litigation has been going on for 15 years. The case is illustrative of the susceptibility of our legal system to dilatory tactics designed to avoid a result. In any event, the plaintiff's liability was finally established on March 23, 1982, by the Court of Appeals affirmance of our order granting specific performance to Todem Homes on its counterclaim in this action (see, *Freidus v Todem Homes,* 80 AD2d 575, *affd* 56 NY2d 526). During the lengthy pendency of this litigation, however, Todem Homes was adjudicated a bankrupt and its interest in the option was assumed by the present defendant as bankruptcy trustee. Among the corollary issues is the postjudgment right of the person who purchased the option from the bankruptcy trustee to intervene in the action, and the validity of the judgment in favor of the trustee as a result of the sale of the option during the period damages were allegedly accruing. The matter was remitted for trial of the damages suffered by the defendant for the delay in conveying title, and the present appeals are from the judgment entered on the jury verdict in that trial, and from two postjudgment orders.

The principal question is whether the judgment in the total amount of $478,514.15 has a sufficient basis to permit it to stand. The plaintiff challenges the two principal components of that award: $408,000 for the use and occupancy of the property during the period of the delay, and $65,096 for the increase in road construction costs resulting from the plaintiff's failure to convey. The remainder of the judgment amount consisted of the costs and disbursements of the action and the stipulated liability of the plaintiff for commitment and bond fees and interest. The plaintiff argues that the damages sought by the defendant are not cognizable under law; that the defendant failed to prove that the damages she sought were within the contemplation of the parties; that the defendant's proof of damages for loss of use of the property was uncertain, contingent and speculative; that the defendant failed to mitigate damages; that the period for which damages were calculated should have ended in 1981, since Todem Homes could have sought a closing at that time; that the plaintiff was entitled to an offset in the judgment for interest on the unpaid purchase money; and that the rulings and conduct of the court were prejudicial to the plaintiff. The plaintiff also claims that the award for increased road construction costs was not based on admissible evidence. We

conclude that the judgment must be reversed to the extent it awards damages for use and occupancy of the property and increased road construction costs, since the defendant failed to establish either.

At the outset of our analysis, it is important to note that the underlying action is in equity for specific performance of a contract to convey real property, and the issue at the jury trial was the amount of damages flowing from the delay in complying with the contract. The action is not one at law to recover damages for breach of contract. In a breach of contract action, the purchaser is compensated for loss of bargain by recovering the difference between the value of the property and the contract price, together with such incidental damages as flow from the breach (see, *Bailey v Morgan,* 95 AD2d 883, *affd* 62 NY2d 844; *Colonial Diversified v Assured Holding Corp.,* 71 AD2d 1011; *Levy v 315 W. 79th St. Corp.,* 222 App Div 9; 62 NY Jur, Vendor and Purchaser, § 166, at 447). Here, with specific performance granted, the contract is being performed, and the purchaser has not lost the value of the bargain. Although legal damages are therefore inappropriate, equity "will, so far as possible, place the parties in the same situation as they would have been in if the contract had been performed according to its terms" (*Worrall v Munn,* 38 NY 137, 142; *see, Smith Corp. v Kraushaar,* 249 App Div 789). To achieve that end, the court will award to the purchaser, in addition to specific performance of the contract, such items of damage as naturally flow from the breach, are within the contemplation of the parties, and can be proven to a reasonable degree of certainty (see, *Regan v Lanze,* 47 AD2d 378, *revd on other grounds* 40 NY2d 475; *Special or Consequential Damages Recoverable, on Account of Delay in Delivering Possession, by Purchaser of Real Property Awarded Specific Performance,* Ann., 11 ALR4th 891; *Specific performance: compensation or damages awarded purchaser for delay in conveyance of land,* Ann., 7 ALR2d 1204; 81A CJS, Specific Performance, § 197, at 159-161; 62 NY Jur, Vendor and Purchaser, § 190, at 492-493). Here, the defendant claims compensation under this rule for the two items at issue on this appeal, the value of the use and occupancy of the property and the increase in road construction costs resulting from the delay in performing. Additional items totaling $5,053.55 were stipulated by the parties and are not challenged.

Since the plaintiff remained in possession of the property throughout the period of her wrongful failure to convey, the

defendant is entitled to the value of the use and occupancy of the property, i.e., its rental value, for that period (see, *Haffey v Lynch,* 193 NY 67; *Bostwick v Beach,* 103 NY 414; *Worrall v Munn,* 38 NY 137, *supra; Matter of 50-05 43rd Ave. [Canfield Props. Corp.—Harris],* 271 App Div 44; *see also, Dillingham Commercial Co. v Spears,* 641 P2d 1 [Alaska]; *Ellis v Mihelis,* 60 Cal 2d 206, 32 Cal Rptr 415, 384 P2d 7; *Fleming v O'Donohue,* 306 Ill 595, 138 NE 183; *Calbreath v Borchert,* 248 Iowa 491, 81 NW2d 433; *Sanders v Bryer,* 152 Mass 141, 25 NE 86; *Russell v Western Neb. Rest Home,* 180 Neb 728, 144 NW2d 728; *Specific performance: Compensation or damages awarded purchaser for delay in conveyance of land,* Ann., 7 ALR2d 1204). The measure of the value of the use and occupancy is the rental value of the property, and not any profits which might be derived from its development (see, *Worrall v Munn,* 38 NY 137, *supra).* In *Worrall,* the value of the property was predicated primarily, if not solely, upon its clay deposits, which the purchaser intended to use to make bricks for a profit. Despite this prospective value, the Court of Appeals denied the purchaser damages for such lost profits and limited his recovery to the value of using the land as it was, which was minimal. Similarly here, while the primary value of the land in question may be for development, the profits which might be derived from such a future use do not constitute the present measure of damages. The question is the value of the rent that could have been obtained during the period of delay. The evidence submitted by the defendant, however, did not establish that rental value.

Rather than relying upon values derived from the rental of comparable parcels or for that matter on any other cognizable method of arriving at what a tenant or other occupant would have paid to rent the 17 acres of hills and ravine, the defendant's appraiser arrived at his figure for the value of the use and occupancy by calculating the fair market value of the land separately for each year of delay and applying to that amount the interest rate payable on treasury bonds for that year. On this basis—the creation of fictional annual leases— the expert concluded that the rental value of the property was $37,000 for 1977, the first year of the damages period, $43,000 for 1978, with the annual amount increasing each year until it reached the sum of $98,000 for 1984. While this approach might establish what a fair return on the cash value of the property might have been had it been sold each successive year in question—a conversion theory—it was not evidence at

all of the reasonable rent that a tenant or occupant of the property might pay. The prospect that any person would pay even $37,000, much less $98,000, for a one-year rental of a vacant, 17-acre property consisting of hills and ravine zoned residential, in Lloyd Harbor makes the testimony seem ludicrous. The defendant's expert thus did not establish the value of the plaintiff's use and occupancy of the property.

The plaintiff's position was that the parcel had no rental value at all. On direct examination, the plaintiff's expert stated that because this property was vacant land which could be used for residential purposes only, it had no rental value. Although on cross-examination this expert seemed to agree that the interest rate on government securities might be a way to arrive at rental value under some circumstances, his testimony was in response to questions which bore little relevance to the issue being tried. The first question was "how do you go about appraising the rental value of such vacant land *regardless of use*". Thus, his response that the rental figure might be based on a percentage of value was directed to a situation about which he had already testified was not comparable to the situation at bar. The second hypothetical posed to the plaintiff's expert was also inapposite. It was as follows:

"Q Somebody wanted to rent [a 17-acre unimproved parcel, the highest and best use for which was for single family development], they wanted to rent the land for 100 years to build houses on, could you establish—

"A (Interposing) Wait a minute. Let me get that straight.

"To build houses on it?

"Q To develop—

"A (Interposing) They are going to build houses on rental land?

"Q That is right.

"A Not going to own the fee?

"Q Not going to own the fee, rent the land, because the owner wants to keep it in his family for the next 120 years."

The question was thus directed at ascertaining what would be a fair return for an owner who would permit someone else to build houses on it which could remain for a hundred years and thus was surrendering the right to sell the property to others who might develop it and who would pay cash that could be reinvested. The expert's response does not indicate

his concurrence in the conclusion that the market could bear such a rental for a one-year lease in Lloyd Harbor. On redirect examination, the expert continued to declare that the defendant's acreage had no rental value.

Without reaching the question of whether an expert's concurrence in the adversary expert's method of calculating damages can ever constitute a waiver of the adversary's failure to prove those damages by any theory cognizable under the law, it is apparent that no waiver occurred here. The plaintiff's position throughout the trial was that there was no rental value to the property. Since the damages awarded by the jury for use and occupancy were obviously based upon the defendant's erroneous theory and the only proof of rental value in the record is that the parcel has no rental value, the award for the value of use and occupancy cannot stand. Although value is a question of fact, an erroneous theory of valuation is an error of law (see, Matter of Seagram & Sons v Tax Commn., 14 NY2d 314, 317). Since an erroneous theory formed the basis for the jury's verdict on use and occupancy, the amount of the judgment must be reduced accordingly.

Our dissenting colleagues agree that the proper measure of damages is the rental value of the property, but argue that because this defendant has been wronged, she should be permitted to recover a fair return on the value of the land each year, even though she cannot establish that the property had any rental value at all and there is no proof that the figure arrived at bears any relation to the rental value of the property. The authorities, however, do not support such a conclusion. Under Worrall v Munn (38 NY 137, supra), the purchaser is entitled to rental value only, even where the land's potential value is far greater. This rather conservative approach is predicated essentially upon the view that the seller has contracted merely to sell the property, not to guarantee the purchaser a profit (see, Specific performance: compensation or damages awarded purchaser for delay in conveyance of land, Ann., 7 ALR2d 1204, § 3, at 1209-1211). Having wrongfully retained possession of the land, the seller must compensate the purchaser in the form of rental value, but since the seller did not contract to provide the purchaser with the return he would have had on treasury bonds or any other return based on reinvestment of the fair market value of the property, that cannot be the measure of compensation. To put the matter in a practical context, the rule which our dissenting colleagues would have us adopt would overturn

prevailing concepts and permit proof of the rental value of any property by calculating a return on its fair market value. In a case such as this, the purchaser would thus be receiving a guaranteed annual return on the fair market value (as altered each year) of unrentable and unproductive property and would receive as well the appreciation on the value of the property.

The cases cited by the dissenters do not support the argument that where property temporarily withheld from conveyance has no actual rental value, the value of its use and occupancy can be determined on the basis of the interest rate on treasury bonds. Two of those cases, *Village of Highland Falls v State of New York* (44 NY2d 505) and *Matter of City of New York (Rego Park Houses)* (201 Misc 126), are condemnation cases in which the requirement that there be some compensation for the taking is constitutional, not merely equitable. Furthermore, in *Matter of City of New York (Rego Park Houses) (supra),* the property was income-producing and the rent-control statutes provided for a fair return based on a percentage of market value and thus would clearly have a rental value more directly related to a fair return on market value. Similarly, the property in *Sanders v Detlaff* (218 Mich 471, 188 NW 446), was a farm which was under an existing lease and as to which the court concluded after hearing the experts that 6% of the purchase price would be a fair rental. None of these cases establish that a percentage return based on the interest rate on treasury bonds is the appropriate measure of damage for failing to convey an unimproved, residential parcel which, because of its nature and topography, had no rental value to anyone.

Here, the testimony as to rental value was wholly unconnected to economic damage. Since the property had no rental value, to affirm the judgment would be to affirm a punitive award that lacks connection with economic reality and which would become a precedent in all specific performance damage cases.

The award of the increase in road construction costs during the period of the delay must also be excluded from the judgment because the defendant failed in its proof on this issue. The evidence of the cost of building a road across the property in 1976 was mere hearsay—a letter from an engineering firm to the chairman of the Village Planning Board consisting of its cost estimate for the purpose of setting a performance bond. There were no minutes to show that the

Planning Board had approved the letter and no testimony that it had been written in the ordinary course of business. Although Todem's principal, Anthony DeMarco, testified that the Village Planning Board had approved the letter estimate, there was no competent evidence of that fact. DeMarco's additional testimony, that at a closing scheduled for October 12, 1976, the plaintiff and her attorneys accepted the letter with respect to the amount of the performance bond was conclusory and insufficient to competently establish the 1976 cost of the road that Todem was required to build in connection with the subdivision of the property.

Finally, the trial court erred in making interest on the unpaid purchase price an adjustment to be made at the closing rather than on offset against the value of the use and occupancy of the property. The plaintiff is entitled to such an offset (see, Bostwick v Beach, 103 NY 414, supra; Worrall v Munn, 38 NY 137, supra; Matter of 50-05 43rd Ave. [Canfield Props. Corp.—Harris], 271 App Div 44, supra), and it should have been included in the judgment, rather than left to be determined at a later date.

Because the judgment must be modified to reduce the amount of damages to the amount which the plaintiff has conceded, her appeal from the denial of her postjudgment motion should be dismissed, and we need not address her remaining claims of error with respect to the trial. We would note, however, that the plaintiff's argument that the damage period should have ended on February 9, 1981, is without merit. The record does not support her contention that the defendant should have arranged to close title on that date.

The order denying Gerald Resnick's application for leave to intervene should be affirmed as the court's determination constituted a proper exercise of discretion. Resnick is seeking a share of the damages awarded to the defendant, but apart from the amount of the stipulation, the defendant proved none. This determination does not preclude any plenary suit by Resnick for recovery of damages for any period of entitlement that he may assert.

THOMPSON, J. (concurring in part and dissenting in part). While I concur in the majority's reduction of the jury award to the extent that it excluded the amount representing increased road construction costs because of a failure of proof on that issue, I do not share their view that the jury's verdict as to use and occupancy of the property in issue must be vacated.

In this protracted legal war, the major casualty has been Todem Homes, which had the right under an option contract to repurchase 17 acres of the 20-acre parcel in issue. During the pendency of this litigation—a period which exceeds 14 years—the plaintiff, Ella Freidus, has unreasonably and without apparent justification refused to perform in accordance with the terms of the option contract. The vacatur of the damages as to use and occupancy, as directed by the majority, flies in the face of the familiar maxim that equity will not suffer a wrong to be without a remedy. Equity will also not allow a wrongdoer to profit by her own misconduct. The majority's decision with respect to the measure of compensation for the plaintiff's delay in performance would work a manifest injustice by permitting the plaintiff to reap a substantial benefit simply because of the considerable difficulty involved in fairly evaluating the full extent of the harm Todem Homes suffered in this case and in making an accurate calculation of damages. I believe that the exercise of sound judicial discretion in granting the remedy of specific performance also permits this court to exercise a measure of flexibility in fashioning a remedy which will provide reasonably adequate compensation to the injured party. Accordingly, because I find that the evidence adduced at the trial was sufficient to support the theory of valuation advanced by Todem Homes, I dissent and vote to sustain the $408,000 awarded by the jury for the use and occupancy of the subject 17-acre parcel.

It is well settled that as an incident to a judgment of specific performance to a purchaser of property, a trial court may award damages for any direct and consequential loss suffered as a result of the seller's delay in conveying the land in accordance with the terms of the contract of sale (*see generally, Special or Consequential Damages Recoverable, on Account of Delay in Delivering Possession, by Purchaser of Real Property Awarded Specific Performance,* Ann., 11 ALR4th 891 *et seq.;* 71 Am Jur 2d, Specific Performance, § 216 *et seq.; cf. Check-Mate Indus. v Say Assoc.,* 104 AD2d 392; *Mott v Devine,* 102 AD2d 946; *Margo Props. v Nelson,* 99 AD2d 1029). Such an award does not arise as legal damages from the breach of the contract; rather, it is more in the nature of an equitable accounting between the parties in affirmance of the contract (*see,* 71 Am Jur 2d, Specific Performance, § 217, at 278-280; *Specific performance: compensation or damages awarded purchaser for delay in conveyance of land,* Ann., 7 ALR2d 1204,

§ 1, at 1205-1207). Thus, in determining the standard for recovery of losses in such cases, courts will largely analogize to general principles relating to legal damages, although exercising a range of discretion not recognized in actions at law *(see, Specific performance: compensation or damages awarded purchaser for delay in conveyance of land,* Ann., 7 ALR2d 1204, § 20, at 1233-1234). In this regard, the courts have a duty when granting specific performance to place the parties, insofar as possible, in the same position they would have been in had the contract been performed according to its terms *(see, Worrall v Munn,* 38 NY 137; *Colonie Motors v Heritage Corp.,* 61 AD2d 1105, 1107; *Bregman v Meehan,* 125 Misc 2d 332, 338).

Pursuant to these principles, the majority correctly notes that because of the plaintiff's delay in conveying the property, the defendant is clearly entitled to an award for the value of the use and occupancy of the land, i.e., damages equal to the rental value of the real property *(see, Haffey v Lynch,* 193 NY 67, 70; *Bostwick v Beach,* 103 NY 414, 423; *Worrall v Munn, supra,* at pp 141-142). With respect to the subject premises, however, the defendant was faced with obvious difficulties, in the unusual circumstances of this case, in establishing the fair rental value of the property. The parcel in question was heavily wooded, hilly and ravine-like. Thus, the ordinary measure of damages using actual rental values of comparable parcels is not an accurate measure of the damages suffered by the defendant in being kept out of possession for these many years. However, in my considered opinion, the inappropriateness of this measure of damages does not preclude recovery by the defendant. Todem Homes was entitled to pursue other measures because our damage law is flexible enough to develop means to compensate those who have suffered an injury. The defendant attempted to demonstrate the dollar amount of damages for use and occupancy through its appraiser's testimony that a fair rental value could be calculated by ascertaining the fair market value for each year that the plaintiff was in possession and applying to that amount the interest rate payable on governmental securities for that year. Thus, for the period from October 1976, when specific performance of the option contract was first ordered, until April 1985, when the trial on damages was held, the rental value was calculated at a total of $594,000. Furthermore, although my colleagues in the majority read the testimony of the plaintiff's expert differently, the plaintiff's expert essentially conceded that a fair

rental value of the property could be determined by estimating the value of the land and taking a percentage of the value from various sources such as capitalization and interest rates.

Drawing on this expert testimony and recognizing equity's interest in making an injured party whole, I can find no occasion to disturb the portion of the jury verdict awarding the defendant $408,000 for the plaintiff's use and occupancy of the land over an 8½-year period. The verdict was fairly based on evidence presented to the jury and has support in the expert testimony. More importantly, it fairly gives redress according to the circumstances of this particular case *(see, Worrall v Munn,* 38 NY 137, 142, *supra).*

Vacatur of the award rewards the plaintiff for her prolonged wrongful occupancy and unreasonable conduct in depriving the defendant of all use and enjoyment of the premises. During the 8½-year period of the plaintiff's delay in conveying the property, the value of her three-acre parcel was greatly enhanced because she was thereby provided with a 17-acre zone of privacy. The majority's rigid adherence to an inflexible valuation approach permits the plaintiff to use a traditional approach developed in the law of damages as a sword for injustice rather than as a shield from improper or speculative valuation.

Although the decisional law of this State provides no direct authority for the theory of valuation evident at bar, we may draw support from the decision of the Court of Appeals in the case of *Matter of Merrick Holding Corp. v Board of Assessors* (45 NY2d 538) which, in the context of a tax certiorari proceeding, emphasized the importance of flexibility in valuation determinations and advised that a rigid, inflexible valuation approach would not be tolerated to benefit an individual taxpayer at the expense of the community of taxpayers. Similarly, in the context of a condemnation case it has been held that "[t]here is no fixed formula for computing the rental value of condemned lands any more than such a standard exists to point out the value of the fee of condemned property" *(Matter of City of New York [Rego Park Houses],* 201 Misc 126, 127 [holding that for the city's temporary interest in the condemned lands the only competent evidence was that the condemned lands would have returned 4% of the value of the land]; *see also, Village of Highland Falls v State of New York,* 44 NY2d 505 [rental value computed at 10% of the fair market value of property upon which the State had taken a temporary easement]; *cf. Sanders v Detlaff,* 218 Mich 471, 188

NW 446 [6% on full purchase price of property calculated as fair rental value of such property and awarded as compensation to the purchaser for the delay in delivery of possession of such property]).

In sum, the discretion of the court permits flexibility in calculating damages sufficient to adequately compensate an injured party and to prevent a wrongdoer from profiting from his wrongful conduct. The use and occupancy award at issue should be upheld as reasonably calculated to redress the harm wrought by this interminable litigation. We will also thereby advance the interest of justice in discouraging practices like those evident in the record before us. Accordingly, for the reasons above stated, I concur in the majority opinion except as to the vacatur of the jury verdict awarding damages for use and occupancy of the subject parcel.

RUBIN and LAWRENCE, JJ., concur with LAZER, J. P.; THOMPSON, J., concurs to dismiss the appeal from the order dated November 7, 1985, which denied the plaintiff's motion for a permanent injunction prohibiting enforcement of the judgment, and to affirm the order dated November 7, 1985, which denied Gerald Resnick's motion for leave to intervene, but otherwise dissents, and votes to modify the judgment only by (1) deleting so much of the second decretal paragraph as provides for treating interest on the purchase price as an adjustment at closing, (2) deleting from the third decretal paragraph thereof the words "the sum of Four Hundred Seventy-Three Thousand Ninety-Six ($473,096) Dollars so found by the jury, together with the sum of Five Thousand Fifty Three and $55/100$ ($5,053.55) Dollars liability for which was conceded by plaintiff, and the sum of $(364.60) Dollars, costs and disbursement [sic] as taxed, amounting in all to the sum of Four Hundred Seventy Eight Thousand, Five-hundred-fourteen and $15/100$ ($478,514.15) Dollars", and substituting therefor the words "the sum of Four Hundred Eight Thousand ($408,000) Dollars, together with the sum of Five Thousand Fifty-Three and $55/100$ ($5,053.55) Dollars, liability for which was conceded by the plaintiff, and the sum of Three-Hundred Sixty-Four and $60/100$ ($364.60) Dollars, costs and disbursements as taxed, amounting in all to the sum of Four-Hundred Thirteen Thousand, Four-Hundred Eighteen and $15/100$ $413,418.15) Dollars", and (3) severing the defendant's claim for an offset for interest on the unpaid purchase price of the subject property, and granting a new trial on said claim, and, as so

modified, to affirm the judgment, with an opinion, in which EIBER, J., concurs.

Ordered that the plaintiff's appeal from the order dated November 7, 1985, which denied the plaintiff's motion for a permanent injunction prohibiting enforcement of the judgment is dismissed, without costs or disbursements, as academic; and it is further,

Ordered that the judgment is modified, by (1) deleting so much of the second decretal paragraph as provides for treating interest on the purchase price as an adjustment at closing, (2) deleting from the third decretal paragraph thereof the words "the sum of Four Hundred Seventy-Three Thousand Ninety-Six ($473,096) Dollars so found by the jury, together with the sum of Five Thousand Fifty Three and $55/100$ ($5,053.55) Dollars liability for which was conceded by plaintiff, and the sum of $(364.60) Dollars, costs and disbursement [sic] as taxed, amounting in all to the sum of Four Hundred Seventy Eight Thousand Five-hundred-fourteen and $15/100$ ($478,514.15) Dollars", and substituting therefor the words: "the sum of Five Thousand Fifty-Three and $55/100$ ($5,053.55) Dollars, liability for which was conceded by the plaintiff, and the sum of Three-Hundred Sixty-Four and $60/100$ ($364.60) Dollars, costs and disbursements as taxed, amounting in all to the sum of Five Thousand, Four-Hundred Eighteen and $15/100$ ($5,418.15) Dollars", and (3) severing the defendant's claim for an offset for interest on the unpaid purchase price of the subject property, and granting a new trial on said claim. As so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the order dated November 7, 1985, which denied Gerald Resnick's motion, *inter alia,* for leave to intervene, is affirmed, without costs or disbursements, and without prejudice to the bringing of a plenary action.