STONES RIVER UTILITIES, INC.,  )
                               )     **Davidson Chancery**
         **Plaintiff/Appellee,**    )     **No.  94-1665-III**
                               )
VS.                            )
                               )
METROPOLITAN GOVERNMENT         )     **Appeal No.**
OF NASHVILLE, DAVIDSON COUNTY,)     **01A01-9709-CH-00461**
TENNESSEE, acting by and through )
the ELECTRIC POWER BOARD and    )
d/b/a "NASHVILLE ELECTRIC        )
SERVICE" or "NES",              )

**FILED**

**April 24, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

         **Defendant/Appellant.**    )

**IN THE COURT OF APPEALS OF TENNESSEE**
**AT NASHVILLE**

**APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY**
**AT NASHVILLE, TENNESSEE**

**HONORABLE ELLEN HOBBS LYLE, CHANCELLOR**

Stanley M. Chernau
R. Garry Chaffin
CHERNAU, CHAFFIN & BURNSED
424 Church Street, Suite 1750
Nashville, Tennessee 37219
ATTORNEYS FOR PLAINTIFF/APPELLEE

T. Larry Stewart, No. 3345                    Cyrus L. Booker, No. 10747
Nancy A. Vincent, No. 16938                   Ursula Y. Holmes, No. 18040
STOKES & BARTHOLOMEW                          BOOKER & ASSOCIATES
424 Church Street, Suite 2800                 315 Deaderick Street, Suite 1280
Nashville, Tennessee 37219-2386               Nashville, Tennessee 37238-1280

Eugene W. Ward, No. 3119
Nashville Electric Service
1214 Church Street, Suite 235
Nashville, Tennessee 37203
ATTORNEYS FOR DEFENDANT/APPELLANT

**REVERSED AND REMANDED.**

                              HENRY F. TODD
                              PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
WILLIAM C. KOCH, JR., JUDGE
WALTER W. BUSSART, JUDGE

| | | |
|---|---|---|
| **STONES RIVER UTILITIES, INC.,** | ) | |
| | ) | **Davidson Chancery** |
| **Plaintiff/Appellee,** | ) | **No. 94-1665-III** |
| | ) | |
| **VS.** | ) | |
| | ) | |
| **METROPOLITAN GOVERNMENT** | ) | **Appeal No.** |
| **OF NASHVILLE, DAVIDSON COUNTY,)** | | **01A01-9709-CH-00461** |
| **TENNESSEE, acting by and through** | ) | |
| **the ELECTRIC POWER BOARD and** | ) | |
| **d/b/a "NASHVILLE ELECTRIC** | ) | |
| **SERVICE" or "NES",** | ) | |
| | ) | |
| **Defendant/Appellant.** | ) | |

# O P I N I O N

The defendant, Metropolitan Government and its Electric Power Board have appealed from a jury verdict and judgment in favor of the plaintiff, Stones River Utilities, Inc., for $210,436.24.

On March 18, 1993, defendant issued a six-page invitation to bid to furnish services to defendant. The description of the services is only partly readable. Blanks in the following indicate unprinted portions in the copy in this record. The invitation states:

> Contract to furnish all labor and --- maximum of twelve (12) meter reader --- person and vehicles for contract meter read --- 93 through June 30, 1996, per attached spe--- eet (pages 1-5) which are a part of this cont -– approx. average number of meter read --- meter/year approx. average number job miles 150 --- year. Contract will include lead person --- and cost.

> Comments follow: Contract beginning July 1, 1993 --- 1996.
> Please submit proposal in triplicate.

"Appendix A to Meter Reading Contract" contains a schedule of rates to be paid during the successive years of the contract and the following text:

> (This in no way guarantees a minimum of hours usage, meters read, or obligates N.E.S. in any form.)

"Contract Meter Reader Specifications" contained the following:

> 8. The contractor will furnish a maximum of fifteen (15) Contract Meter Readers with twelve (12) Contract Meter Readers normally being used.

> 9. N.E.S. does not guarantee any minimum number of Contract Meter Readers to be used.
>
> - - - -
>
> 25. The contract can be terminated without cause by either party upon thirty (30) days written notice.

The Electric Power Board, governing body of N.E.S. awarded the contract to plaintiff, and the contract instrument was signed by the Chairman of the Board on May 8, 1993 and by plaintiff on May 10, 1993.

On May 14, 1993, plaintiff's president met with three supervisory employees of N.E.S. Plaintiff asserts that said employees orally promised that, if plaintiff purchased new vehicles for the meter readers, twelve meter readers would be used every day of the three-year duration of the contract.

On June 9, 1993, at the request of plaintiff, the General Counsel of N.E.S. wrote plaintiff as follows:

> Dear Ms. Wilson:

> It is standard policy of NES that all of its service contracts state "...NES is not required to assign any amount of work or any number of projects...", and further, to have a 30-day notice of cancellation of the contract.

> NES is in the business of distributing electricity used by its customers. In order to know how much is used, NES has to have individuals to read these meters. As long as NES is in this business, the program of reading meters will always be utilized.

> As to the 30-day notice of cancellation, NES reserves this right in the event the contractor does not fulfill the terms of the contract.

> I hope this clarifies the matter for you.

Plaintiff purchased twelve new vehicles on credit.

On August 20, 1993, the "meter superintendent" of N.E.S. wrote a letter to plaintiff calling attention to deficiencies in performance and qualifications of meter readers and threatening cancellation.

The same supervisor compiled deficiency statistics for the months of July 1993 through July 1994.

On January 10, 1994, the vice president of construction and maintenance operations of N.E.S. wrote plaintiff as follows:

> In accordance with paragraph XVI of NES Contract #93-94-081, this letter is the required written notice that NES is hereby terminating the mutual business contract for meter reading services.
>
> This business decision is based on convenience rather than failure to perform per the referenced contract. The current management at NES is in the process of reorganizing the meter reading function and as part of this reorganization, the meter reading is being returned to the control and performance by permanent NES employees. This proposed reorganization was announced to the employees on January 5 and 6, 1994.
>
> NES management is making this move as part of the long range plan to improve the NES public image and increase productivity. To achieve these goals, it is felt that the return to meter reading by permanent employees is the best approach.
>
> This action will in no way affect other contracts currently in action between NES and your company, nor will it affect your status as an approved and active vendor under the NES purchasing policy. I have noted the improvement in the performance under the referenced contract and your cooperation and attention to problems is appreciated. If you need to use NES as a reference in future business negotiations, I will be glad to write or otherwise communicate our positive impression of your business performance.
>
> Please contact my office and arrange a meeting to discuss the terms and timing for phasing out the contract services and minimizing the impact on the NES customers and the affected employees. I suggest that this meeting be scheduled for Friday, January 14, 1994, or after to allow time to evaluate the best possible transition.

On February 4, 1994, the same official of N.E.S. wrote plaintiff as follows:

> Due to recent announcements and the undetermined effects on the meter reading function, the action to terminate the above contract has been rescinded. The purpose of this action is to keep options open to handle any meter reading contingencies.
>
> Melvin Bell or Tyler Mills will notify you of any needs we may have under this contract.

Plaintiff insists that N.E.S. hired its employees and refused to train substitutes, yet insisted that plaintiff hold readers on standby to serve, if needed.

On February 16, 1994, plaintiff filed this suit. On March 2, 1995, the Trial Court granted summary judgment of dismissal. On October 25, 1995, this Court affirmed the summary judgment in regard to breach of the written contract or any modification. This former judgment of this Court is now final and is the "law of the case" precluding any re-examination or revision. *Pierce v. Tharp*, 224 Tenn. 328, 457 S.W.2d (1970).

The opinion of this Court in the former appeal reversed the summary judgment on the issue of estoppel and said:

> With respect to the estoppel issue, Stones River's president said in an affidavit filed in opposition to the motion for summary judgment that, on May 14th, 1993, she met with members of NES's staff who strongly suggested that Stones River obtain new vehicles to use in performing the contract. Specifically, she said, "NES further assured us that we would have twelve readers every day for the duration of the contract, if we bought new trucks. Therefore, at the urging of NES we decided to purchase all new vehicles." Earlier, when she gave her deposition, she was asked if NES told her she had to buy new vehicles. She replied:
>
> > No, I don't think they said you had to purchase new vehicles, because they couldn't say that. I had to -- when the specs called for properly functioning vehicles, but they said we needed new vehicles. And they made that very clear.
> >     - - - -
> An action based on estoppel may be brought where the promises of one party are relied on by another party to his

detriment.  In *Foster & Creighton Co. v. Wilson Contracting*, 579 S.W.2d 422 (Tenn. App. 1979), this court said:

> [W]hen one man by his promise induces another to change his situation, repudiation of the promise would amount to a fraud.  Where one makes a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and where such promise does in fact induce such action or forbearance, it is binding if injustice can be avoided only by enforcement of the promise.  579 S.W.2d at 427.

> We are of the opinion that there are contested facts in this case that make summary judgment on the estoppel issue improper.  See *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993).  Therefore, we reverse the judgment below on that point and remand the cause to the trial court for further proceedings on the issue of estoppel only.   Otherwise, the judgment is affirmed.

In the cited case of Foster & Creighton Co. v. Wilson Contracting Co., the defendant was the general contractor and the plaintiff was a subcontractor in improving runways of an airfield.  The plaintiff contracted to do all finish paving, but part of the paving could not be performed until grading was completed by another subcontractor.  The general contractor insisted that the plaintiff move extensive paving equipment to the job site before grading was complete and assured plaintiff that the grading would be completed on time to avoid delay in paving.  Plaintiff moved the equipment on the job site early, but the grading was not completed promptly as promised, and plaintiff suffered extensive damage from the delay.  No issue was raised as to the authority of defendant's employee to make the promises of prompt grading.  This Court affirmed a judgment for damages and said:

> Generally, a promise unaccompanied by a consideration is unenforceable. 17 C.J.S. Contracts § 71, pp. 748 et seq.  However, when one man by his promise induces another to change his situation, a repudiation of the promise would amount to a fraud.  Where one makes a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and where such promise does in fact induce such action or forbearance, it is binding if injustice can be avoided only by enforcement of the promise.  17 C.J.S. Contracts § 74, p. 764.

The same rule has been called the doctrine of promissory estoppel. In 17 Am. Jur.2d, Contracts, § 89, pp. 431, 432, is found the following text:

> "The trend of modern cases is to extend the rule of estoppel to promissory statements, where the evidence clearly shows that the statements were made to induce action and the promisor was culpable in some respects. But in order for the doctrine of promissory estoppel to apply, the promise which is sought to be enforced must have induced action of a definite and substantial character by the promisee. Also, justifiable reliance and irreparable detriment to the promisee are necessary factors to enable him to invoke the doctrine of promissory estoppel. Generally speaking, the mere fact that a promisee relies upon a promise made without other consideration does not impart validity to what before was void. There must be some ground for saying that the acts done in reliance upon the promise were contemplated by the contract, either impliedly or in terms, as the conventional inducement, motive, and equivalent for the promise."

Defendants represented or promised to plaintiff that the grading would proceed to completion on a schedule that would enable plaintiff to begin paving the new grading as soon as the resurfacing was completed (having been started on July 1). Defendants knew that plaintiff would rely upon the representation or promise; plaintiff did indeed rely thereon; the promise was not kept; and plaintiff suffered damage thereby.

- - - -

Defendants urged plaintiff to begin sooner than he was obligated to begin, and promised the grading would be ready. Plaintiff began work early in reliance upon the promise, the promise was not fulfilled, and plaintiff was damaged thereby. Defendants' collateral promise was made with good consideration, and it is enforceable.

It is no defense that the true wrongdoer was Scholes, or that defendants did the best they could to speed the work of Scholes. The promise was that the grading would be ready. It was an independent assurance of a condition which defendants were bound to make good or to indemnify plaintiff for loss.

In summary, plaintiff is entitled to damages for the breach of defendants' promise that:

> "You can start on the asphalt and when you get through with that, we'll have the rest

of the job where you can proceed along.  So
come on in."

and not otherwise.

*Foster & Creighton Co. v. Wilson Contracting Co.* is the authority for the creation of promissory estoppel.  There was no issue in that case as to the authority of those who spoke for the corporation.  In the present case, after the former opinion of this Court, and on remand to the Trial Court, the issue was made by the defendant, a governmental entity for whom only a particular body has authority to speak.  One dealing with municipal officers, boards or committees is bound at his peril to take notice of the limitation of their authority. *J. A. Kreis & Co. v. City of Knoxville*, 145 Tenn. 297, 237 S.W. 55 (1921).  The contract with plaintiff was approved by the Electric Power Board and signed by its chairman.  This was adequate notice to plaintiff that the power of binding the Nashville Electric Service was reposed in its Board and was evidenced only by a document signed by its chairman.  Without the action of the Board and its chairman, no other employee of the Board had any authority to bind the Board by contract, quasi contract or estoppel.

This record contains no evidence that any statement or communication relied upon by plaintiffs to establish estoppel was authorized by the Nashville Electric Power Board.  In this situation, the verdict and judgment must be set aside and the remaining portion of plaintiff's suit must be dismissed. *Camurati v. Sutton*., 48 Tenn. App. 54, 342 S.W.2d 732 (1961).

The judgment of the Trial Court under review in the present appeal is reversed and the suit is dismissed.  Costs of this appeal are taxed against the plaintiff.  The cause is remanded to

the Trial Court for collection of costs accrued in that court.

**REVERSED AND REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
WALTER W. BUSSART, JUDGE