# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 6, 2003 Session

## EARL M. SHAHAN v. FRANKLIN COUNTY, ET AL.

### Appeals from the Chancery Court for Franklin County
### Nos. 16,129 & 16,235     John W. Rollins, Judge

---

### No. M2002-00725-COA-R3-CV - Filed December 30, 2003

---

This case involves a dispute between Franklin County and the developer and residents of a subdivision over the maintenance of roads in the subdivision. After the county declined the developer's public dedication of the roads and denied applications for building permits in the subdivision because of inadequate roads, the developer and several property owners filed separate suits against the county in the Chancery Court for Franklin County to determine the responsibility for maintaining the roads. The property owners also sought specific performance and damages from the developer. The trial court consolidated the cases and, following a bench trial, held that the county was not responsible for maintaining the roads. The trial court also directed the developer to bring the roads up to 1990 subdivision standards. The developer asserts on this appeal that there had been an implied public dedication of the roads and, therefore, that the county was responsible for maintaining them. For their part, two property owners assert that they are entitled to damages in addition to specific performance. We have determined that the trial court correctly determined that the roads were not public roads and that the property owners were not entitled to damages as well as specific performance. However, we have also determined that the trial court should have ordered the developer to bring the roads up to the county's current road standards.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Modified and Affirmed

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Clifton N. Miller and Felicia B. Walkup, Tullahoma, Tennessee, for the appellant, Earl M. Shahan.

John B. Curtis and Steve E. Smith, Chattanooga, Tennessee, for the appellees, Franklin County, Tennessee, Montgomery Adams, and John W. Woodall.

J. Stanley Rogers, Christina Henley Duncan, and Laura D. Riddle, Manchester, Tennessee, for the appellees, Ron Cunningham, Linda Hudson, George Peckinpaugh, Dorothy Peckinpaugh, Jackson Graham, and Joyce Graham.

# OPINION

## I.

Earl M. Shahan has owned and operated a real estate business in Franklin County for over fifty years. He had acquired many tracks of real property over the years, and by November 1989, he owned approximately eighty acres bordering Radio Beam Lane and Deer Creek Lane by inheritance, gift, and purchase. At that time, Radio Beam Lane and Deer Creek Lane were only unimproved dirt roads running over fields and farmland.

In September 1990, Mr. Shahan and Charles Abbott, one of Franklin County's road commissioners, discussed the need for a connecting road between Highway 41A and Rock Creek Road. Mr. Abbott told Mr. Shahan that the county would "try to get a road there" if he would obtain a 50-foot right-of-way and make certain improvements to Radio Beam Lane and Deer Creek Lane. Over the next three years, Mr. Shahan obtained the 50-foot right-of-way and made $37,000 in improvements to Radio Beam Lane and Deer Creek Lane. He bulldozed the roads, placed drainage tiles, and cleared and graded the roadbed. In addition, he recorded easements for ingress and egress for all his property along Deer Creek Lane and Radio Beam Lane, and he prepared a plat showing a 50-foot right-of-way for power lines.

On November 30, 1993, Mr. Shahan delivered a deed to Mr. Abbott conveying ownership of the rights-of-way for Radio Beam Lane and Deer Creek Lane to Franklin County. However, the Franklin County Highway Commission declined to accept the deed for the rights-of-way, and in early 1994, Mr. Abbott returned the deed to Mr. Shahan. The county declined to accept the roads because they failed to meet county standards. Specifically, they (1) were not wide enough, (2) lacked sufficient gravel, and (3) were not paved with asphalt. In addition, the drainage tiles were inadequate, and the ditches running along the roads were obstructed. Because it had declined to accept these roads, the county also declined to maintain them. However, the public has used both Radio Beam Lane and Deer Creek Lane as a connector between Rock Creek Road and Highway 41A.

Mr. Shahan continued to subdivide and sell his property along Radio Beam Lane and Deer Creek Lane even though Franklin County declined to accept the roads.[1] He advertised the property along Deek Creek Lane as a "perfect setting for your dream home" and that the tracts he was selling were "perfect building sites." In October 1994, George and Dorothy Peckinpaugh purchased fifteen acres from Mr. Shahan for $36,000. In February 1997, Linda Hudson and Ron Cunningham purchased six acres from Mr. Shahan for $21,400. Later in 1997, Dennis and Brenda Huprich purchased five and one-half acres for $17,250. In September 1998, Jackson and Joyce Graham purchased nine acres for $27,750, and Larry Evans purchased five acres and a home from William and Sharon Devine, who had purchased the lot from Mr. Shahan in 1995. Mr. Shahan assured all of the purchasers that Deer Creek Lane and Radio Beam Lane would be taken over, improved, and maintained by the county.

---

[1] In November 1993, prior to the county's rejection of the roads, Mr. Shahan had sold one 5.5-acre tract to his son and daughter-in-law. They constructed a home on this tract.

The property owners eventually began applying for building permits to construct homes on their property. The Peckinpaughs obtained a building permit in 1996, and Ms. Hudson and Mr. Cunningham obtained a building permit in October 1997. Thereafter, Mark Dudley, Franklin County's building commissioner, declined to issue other building permits because neither the subdivision nor Radio Beam Lane and Deer Creek Lane had been approved by the planning commission. As a result of the moratorium on building permits, the Grahams have been unable to construct a home on their lot. Their efforts to sell the property have been unsuccessful because potential buyers lost interest in the property when they discovered that they would be unable to obtain a building permit.

Mr. Shahan had not given up on turning over the responsibility for Radio Beam Lane and Deer Creek Lane to the county. In January 1998, he surreptitiously recorded a deed dedicating the lanes to the county. However, the county discovered the plot and again rejected the deed. In 1999, Mr. Shahan again asked the county to accept the roads; however, the county again declined to consider accepting the roads until he improved them up to county standards.

On November 16, 1999, Mr. Shahan filed suit against the Franklin County officials in the Chancery Court for Franklin County. He argued that the county was now responsible for the maintenance of Radio Beam Lane and Deer Creek Lane on the alternative theories of implied dedication and promissory estoppel. He also requested a declaratory judgment that the property owners along these roads were entitled to building permits. On February 22, 2000, several persons who had purchased property from Mr. Shahan filed suit in the Chancery Court for Franklin County against the county and Mr. Shahan. The property owners sought a declaratory judgment regarding the responsibility for maintaining the roads, specific performance against Mr. Shahan, and compensatory damages against both the county and Mr. Shahan.

The trial court consolidated the two cases in August 2000, and thereafter the county moved for a summary judgment, and Mr. Shahan moved for a partial summary judgment. The trial court denied Mr. Shahan's motion but partially granted the county's motion by dismissing (1) Mr. Shahan's and the property owners' claims for monetary damages, (2) the claims arising out of the denial of building permits, and (3) all claims against individual county defendants. Following a bench trial in January 2002, the trial court filed an order on February 7, 2002, directing Mr. Shahan to improve Radio Beam Lane and Deer Creek Lane up to its 1990 road standards and to submit his subdivision to the Franklin County Planning Commission for approval within six months. The trial court also denied the property owners' claims for monetary damages against Mr. Shahan. Both Mr. Shahan and the property owners have appealed.

## II.
### MR. SHAHAN'S EQUITABLE ESTOPPEL CLAIM

Mr. Shahan insists that Franklin County is estopped from applying its subdivision regulations to his property and from declining to accept Radio Beam Lane and Deer Creek Lane as public roads. He argues that Mr. Abbott, in his official capacity as a county road commissioner, promised him that the county would take over the responsibility for the roads once he acquired a 50-foot right-of-way and improved them and that he had fully performed his end of the bargain. Mr. Shahan's equitable

estoppel claim must fail for three reasons. First, Mr. Abbott lacked the authority to bind the county to accept these roads as public roads. Second, the evidence does not support Mr. Shahan's claim that Mr. Abbott promised to accept these roads as public roads. Third, Mr. Shahan never constructed the roads to existing county standards.

## A.

The doctrine of equitable estoppel is not favored in Tennessee, and parties seeking to invoke it have the burden of proving each and every element. *Robinson v. Tennessee Farmers Mut. Ins. Co.,* 857 S.W.2d 559, 563 (Tenn. Ct. App. 1993). The doctrine protects, rather than creates, rights. *Franklin v. St. Paul Fire & Marine Ins. Co.*, 534 S.W.2d 661, 666 (Tenn. Ct. App. 1975); *E.K. Hardison Seed Co. v. Continental Cas. Co.*, 56 Tenn. App. 644, 652, 410 S.W.2d 729, 733 (1967). Equitable estoppel may be invoked in appropriate circumstances to prevent one party from taking unfair advantage of another party's justifiable reliance on his or her representations or conduct. *Bokor v. Holder,* 722 S.W.2d 676, 680 (Tenn. Ct. App. 1986).

Applying the doctrine of equitable estoppel to local governments is even less favored, and so the doctrine is not applicable to governmental defendants to the same extent that it is applicable to private parties. *Paduch v. City of Johnson City,* 896 S.W.2d 767, 772 (Tenn. 1995). In fact, except for "very exceptional circumstances," the doctrine does not apply to government actions. *Bledsoe County v. McReynolds,* 703 S.W.2d 123, 124 (Tenn. 1985). As the Tennessee Supreme Court has explained, "in those Tennessee cases where estoppel was applied, or could have been applied, the public body took affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence." *Bledsoe County v. McReynolds,* 703 S.W.2d at 125.

This court has held that equitable estoppel may be invoked against governmental agencies only when the agency induced the party to give up property or a right in exchange for a promise. *Thompson v. Department of Codes Admin,* 20 S.W.3d 654, 664 (Tenn. Ct. App. 1999); *Elizabethton Hous. and Dev. Agency, Inc. v. Price,* 844 S.W.2d 614, 618 (Tenn. Ct. App. 1992). Accordingly, a party may invoke equitable estoppel against a governmental agency only when the facts clearly establish the existence of an implied contract or that the government has induced a party to relinquish a cause of action. *Thompson v. Department of Codes Admin,* 20 S.W.3d at 664; *Elizabethton Hous. & Dev. Agency, Inc. v. Price,* 844 S.W.2d at 618.

## B.

The essence of Mr. Shahan's equitable estoppel claim is that Mr. Abbott induced him to spend money to improve Radio Beam Lane and Deer Creek Lane by promising him that the county would take over the responsibility for maintaining the roads once they were constructed. He insists that he could reasonably rely on Mr. Abbott's promise because Mr. Abbott was the Franklin County road commissioner in charge of the roads in that part of the county. Because the trial court made few findings of fact regarding Mr. Shahan's equitable estoppel claim, we have reviewed the record de novo and have determined that the evidence does not support Mr. Shahan's claim.

Despite the fact that Mr. Abbott may have been a county road commissioner in the early 1990s, he did not have authority to bind the county to accept private roads as public roads.[2] Parties who deal with governmental officials are presumed to know the limits of the official's authority. *J.A. Kreis & Co. v. City of Knoxville*, 145 Tenn. 297, 305, 237 S.W. 55, 57 (1921); *Stones River Utils. v. Metro. Gov't*, 981 S.W.2d 175, 178 (Tenn. Ct. App. 1998). Accordingly, when Mr. Shahan had his conversation about the roads with Mr. Abbott in 1990, he knew or should have known that Mr. Abbott could not unilaterally bind the county to accept the roads and, therefore, that any commitment Mr. Abbott might have made regarding the roads was legally unenforceable.

In addition to our conclusion that Mr. Abbott lacked authority to bind the county, we have also determined that the record does not bear out Mr. Shahan's claim that Mr. Abbott actually promised that the county would accept these roads if they were improved. Mr. Abbott's recollection of his conversation with Mr. Shahan differs significantly from Mr. Shahan's. Mr. Abbott recalls that he told Mr. Shahan that the county would "try to help him build a road through there." We do not construe this comment to be an unequivocal promise to accept the roads or some implied authorization to construct roads that did not meet the existing county requirements for new road construction. Mr. Shahan was far from a neophyte in 1990 when he had his conversation with Mr. Abbott and should have known the difference between encouragement and a binding commitment.

Finally, the evidence establishes beyond question that Mr. Shahan's improvements to Radio Beam Lane and Deer Creek Lane did not meet the county's existing requirements for new road construction.[3] It is essentially undisputed that these roads (1) were not wide enough, (2) lacked sufficient gravel, (3) were not paved with asphalt, and (4) lacked adequate drainage tiles. Mr. Shahan, as an experienced developer, knew or should have known the requirements for new road construction, and, therefore, it was not reasonable for him to entertain the notion that the county would accept or could be required to accept newly constructed roads that did not meet the county's minimum standards.

Mr. Shahan cannot use a casual conversation with a county road commissioner to circumvent the county standards for new road construction or to force the county taxpayers to bear the expense of properly constructing and then maintaining his roads. The record demonstrates that Mr. Shahan has not proved the existence of the sort of exceptional circumstances that would warrant invoking the doctrine of equitable estoppel against Franklin County. Accordingly, we affirm the trial court's conclusion that Mr. Shahan failed to substantiate his equitable estoppel claim.

---

[2] At the time of the conversation between Messrs. Abbott and Shahan in 1990, Tenn. Code Ann. § 13-3-406 (1999) provided that "no county or court or board or officer thereof or any other public officer or authority shall accept, lay out, open, improve, grade, pave or light any road . . . unless such road has been accepted or opened or has otherwise received the legal status of a public road . . .."

[3] In 1990, these regulations required: (1) a fifty-foot cleared right-of-way; (2) proper grading and drainage; (3) a thirty-foot minimum graded road top; (4) a minimum of six inches of compacted crushed stone extending from shoulder to shoulder for thirty feet; (5) a minimum of two inches of asphalt extending at least twenty-two feet wide with shoulder stone; (6) properly installed cross drains and drainage tiles; (7) properly installed road signs; (8) painted reflective center and side lines a minimum of four inches wide; and (9) written verification from the developer that all of the required road regulations have been met.

-5-

### III.
### MR. SHAHAN'S IMPLIED DEDICATION CLAIM

Mr. Shahan also argues that there has been an implied dedication of Radio Beam Lane and Deer Creek Lane as public roads because the public has been using these roads since he improved them. While it is undoubtedly true that the public has used the roads, we have determined that the doctrine of implied dedication does not apply because the roads are in an unapproved subdivision. The doctrine of implied dedication cannot be used to circumvent duly enacted subdivision regulations.

### A.

A dedication of real property for public use requires an offer of the property for public use by its owner and the public's acceptance of the property owner's offer. *Stoker v. Brown,* 583 S.W.2d 765, 766 (Tenn. 1979); *Winn v. Tucker Corp.,* 848 S.W.2d 64, 68 (Tenn. Ct. App. 1992). Both the offer and the acceptance need not be express. They may be implied. *State ex rel. Matthews v. Metropolitan Gov't*, 679 S.W.2d 946, 948 (Tenn. 1984); *West Meade Homeowners Ass'n, Inc. v. WPMC, Inc.,* 788 S.W.2d 365, 366 (Tenn. Ct. App. 1989).

Parties seeking to prove an implied dedication must present clear and convincing evidence that the property owner intended to permanently part with the real property and to vest it in the public. *Jackson v. Byrn,* 216 Tenn. 537, 543, 393 S.W.2d 137, 140 (1965); *McKinney v. Duncan,* 121 Tenn. 265, 271, 118 S.W. 683, 684 (1909). This evidence may be circumstantial. *Cole v. Dych,* 535 S.W.2d 315, 319 (Tenn. 1976); *Rogers v. Sain,* 679 S.W.2d 450, 453 (Tenn. Ct. App. 1984). They must also prove that the property has been accepted for public use. The government's acceptance of the property likewise need not be express. It too may be implied. *Nashville & D.R.R. v. State*, 60 Tenn. 55, 57-58 (1873); *Hackett v. Smith County*, 807 S.W.2d 695, 699 (Tenn. Ct. App. 1990); *Cartwright v. Bell*, 57 Tenn. App. 352, 368-369, 418 S.W.2d 463, 470-471 (1967).

An implication of public acceptance arises from "a general and long-continued use by the public as of right." *Doyle v. City of Chattanooga*, 128 Tenn. 433, 438, 161 S.W. 997, 998 (1913). While the common-law does not require a particular duration of public use, "it ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." *Scott v. State,* 33 Tenn. (1 Sneed) 629, 633 (1854); *see also Town of Benton v. Peoples Bank of Polk County,* 904 S.W.2d 598, 602 (Tenn. Ct. App. 1995). The Tennessee Supreme Court has explained that

> [n]o particular period is controlling. Use for twenty years might be insufficient to establish dedication in one case and yet it might be established in another in one year. Dedication is not dependent upon the duration of use. Use for a long period of time is, however, a circumstance tending to show the fact of dedication.

*Cole v. Dych*, 535 S.W.2d at 320.

However, the doctrine of implied dedication should not, as a general matter, apply to roads that are part of a subdivision as defined in Tenn. Code Ann. § 13-3-401(4) (1999). The regional planning statutes, like their municipal counterparts,[4] exist to promote the health, safety, and welfare of the local residents and property owners by prescribing uniform rules for the orderly development of real property. Tenn. Code Ann. § 13-3-302 (1999). They protect the public by guaranteeing that adequate streets will be provided when property is subdivided. *Foley v. Hamilton*, 659 S.W.2d 356, 360 (Tenn. 1983). Accordingly, persons desiring to develop their property should not be permitted to use the doctrine of implied dedication to circumvent these statutes and regulations.

The regional planning statutes themselves cannot easily accommodate the implied dedication doctrine. Subdivisions must be approved by the regional planning commission. Tenn. Code Ann. § 13-3-402 (1999). Once the "platting jurisdiction" of a regional planning commission has attached,

> no county or court or board or officer thereof or any other public officer or authority shall accept, lay out, open, improve, grade, pave or light any road . . . unless such road has been accepted or opened or has otherwise received the legal status of a public road prior to the attachment of the planning commission's jurisdiction, or unless such road corresponds in its location and lines with a road shown on a subdivision plat approved by the planning commission.

Tenn. Code Ann. § 13-3-406 (1999). Accordingly, a county may not accept new or improved roads[5] in a subdivision without first approving the subdivision plat and then accepting the roads.[6]

The doctrine of implied acceptance has only limited application to property within subdivisions governed by local planning statutes. It may be invoked when a local government has declined or refused to explicitly accept property after a developer of an approved subdivision has complied with all applicable regulations. Accordingly, we have employed the doctrine in a case where the developer had complied with all applicable regulations and had not only obtained the planning commission's approval of the subdivision plat but also had obtained a certification by the county road commission that the roads in the subdivision complied with county standards. Even though the local government had not expressly accepted the roads, we held that an implied acceptance had occurred because the residents in the subdivision and the public, including mail carriers, school buses, and law enforcement vehicles had used the road. *Hackett v. Smith County*, 807 S.W.2d at 699.

---

[4]Tenn. Code Ann. § 13-4-301(4) (1999).

[5]Roads which have not received the legal status of a public road.

[6]Of course, approval of a plat by the regional planning commission "shall not be deemed to constitute or effect an acceptance by any county or by the public of the dedication of any road or other ground shown upon the plat." Tenn. Code Ann. § 13-3-405 (1999). The Tennessee Supreme Court has explained that "the exception carved out of the act providing that plat approval is not acceptance of roads therein clearly shows the legislative intent of requiring specific and separate acceptance of roads, over and above the steps required to get plat approval." *Foley v. Hamilton*, 659 S.W.2d at 360. Such acceptance would depend upon whether the road at issue complied with the county's regulations regarding new roads.

**B.**

To determine whether Mr. Shahan may take advantage of the doctrine of implied dedication, we must first determine whether his development of the property along Radio Beam Lane and Deer Creek Lane is a subdivision. Mr. Shahan insists that his development is not a subdivision because the lots in the subdivision exceed five acres. While we have no doubt that Mr. Shahan set out to avoid the regional planning commission, we find that he has not succeeded.

Tenn. Code Ann. § 13-3-401(4)(B) defines a "subdivision" as "the division of a tract or parcel of land into two (2) or more lots, sites, or other divisions requiring new streets or utility construction, or any division of less than five (5) acres for the purpose, whether immediate or future, of sale or building development." This definition plainly includes a development containing lots larger than five acres if the development required new streets or utility construction. Accordingly, we determined that a project requiring the developer (1) to make major improvements in an existing road running through the property, (2) to arrange for providing power to various lots, and (3) to install a new water line was a subdivision. *Loftin v. Langsdon*, 813 S.W.2d 475, 479-80 (Tenn. Ct. App. 1991).

Mr. Shahan made $37,000 in improvements to Radio Beam Lane and Deer Creek Lane solely for the purpose of making his property attractive to potential purchasers. Like the developer in *Loftin v. Langsdon*, he improved the existing roads by bulldozing brush and trees, grading, and installing drainage. He also prepared a plat to enable the local electric utility to install power lines for the development. Like the developer in *Loftin v. Langsdon*, Mr. Shahan did not begin selling the tracts in his development until he had completed the improvements to the road. There is little doubt that the improvements to Radio Beam Lane and Deer Creek Lane were required by "the imperatives of the marketplace." *Loftin v. Langsdon*, 813 S.W.2d at 480. Accordingly, we conclude that Mr. Shahan's development is a subdivision because it required new street and utility construction.[7]

**C.**

Because Mr. Shahan's development is a "subdivision" as defined in Tenn. Code Ann. § 13-3-401(4)(B), he was required not only to obtain approval of his plat, but he was also required to obtain approval of his improvements to the roads in his subdivision before the county could be required to accept the roads and assume responsibility for their maintenance. Mr. Shahan did neither. In addition, his improvements to Radio Beam Lane and Deer Creek Lane did not comply with the applicable county requirements for new roads. These facts distinguish this case from *Hackett v. Smith County* in which the developer had complied with all applicable requirements for new roads. Mr. Shahan's wholesale disregard for the subdivision regulations and road requirements disentitles him to claim the benefit of the doctrine of implied dedication. Accordingly, the trial court properly declined to find that there had been an implied acceptance of Radio Beam Lane and Deer Creek Lane.

---

[7]We note that Mr. Shahan violated Tenn. Code Ann. § 13-3-410(a) (1999) by selling tracts of land in his development before obtaining planning commission approval.

# IV.
## THE STANDARDS APPLICABLE TO RADIO BEAM LANE AND DEER CREEK LANE

Because Mr. Shahan has failed to pass along the obligation to maintain Radio Beam Lane and Deek Creek Lane to Franklin County, he has the continuing obligation to maintain these roads. The evidence convincingly demonstrates he has shirked his responsibility. Several property owners testified that the roads were barely passable because of deep potholes and that they had become "an obstacle course." When it rained, poor drainage caused water to cover the roadway in certain areas. Accordingly, the trial court properly ordered Mr. Shahan to maintain these roads.

However, we have determined that the trial court erred by only requiring Mr. Shahan to bring these roads up to the standards as they existed in 1990. This decision effectively rewards Mr. Shahan for ignoring the subdivision regulations that were clearly applicable to his property. These roads are located in a subdivision that has yet to be approved by the regional planning commission. Mr. Shahan has never requested the planning commission to approve his subdivision, and the planning commission will not be required to approve his subdivision until he submits a plat that meets all applicable requirements. Likewise, the commission will not be required to accept the roads in the subdivision until they meet applicable requirements.

In light of the fact that Mr. Shahan never sought appropriate public acceptance of these roads, he must take the appropriate steps required by law before Franklin County can be required to accept them. It is his obligation to bring these roads up to present standards, not the standards existing in 1990. Accordingly, we modify the judgment to require Mr. Shahan to repair or improve Radio Beam Lane and Deer Creek Lane so that they meet the county's current road standards.[8]

# V.
## THE PROPERTY OWNERS' REQUESTS FOR DAMAGES

Two of the property owners living along Radio Beam Lane and Deer Creek Lane insist that they are entitled to collect monetary damages from Mr. Shahan in addition to specific performance. They assert that they have lost the beneficial use of the money they used to purchase the property and, therefore, that they are entitled to interest on the money between the time they purchased the property and the time that Mr. Shahan obtains approval of the subdivision and the roads. We have determined that the trial court properly denied these damage claims.

## A.

A breach of contract triggers both legal and equitable remedies. The preferred remedy is the legal remedy – monetary damages. *Shuptrine v. Quinn*, 597 S.W.2d 728, 730 (Tenn. 1979); *Robinson v. Kenney*, 526 S.W.2d 115, 119 (Tenn. Ct. App. 1973). The purpose of monetary damages is to compensate a party to a contract for the loss or injury sustained by the other party's breach. *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998). However, there are

---

[8] Based on this record, the Franklin County Highway Commission now requires new roads to comply with the 1995 Franklin County new road standards.

occasions when monetary damages are insufficient to protect a contracting party's expectation interests. In those circumstances, the equitable remedy of specific performance is warranted. *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 614 (Tenn. Ct. App. 1990); Restatement (Second) of Contracts § 359(1) (1981).

Specific performance is proper whenever there is any reasonable doubt regarding the adequacy of monetary damages. 12 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 1139, at 188 (Interim ed. 2002) ("CORBIN ON CONTRACTS"). While granting specific performance is discretionary, *North v. Robinette*, 527 S.W.2d 95, 98 (Tenn. 1975); *Hillard v. Franklin*, 41 S.W.3d 106, 111 (Tenn. Ct. App. 2000), the courts frequently grant specific performance with regard to contracts for the sale of real property. *Radiophone Broadcasting Station v. Imboden*, 183 Tenn. 215, 219, 191 S.W.2d 535, 537 (1946); *McGaugh v. Galbreath*, 996 S.W.2d 186, 191 (Tenn. Ct. App. 1998).

In proper circumstances, a trial court may award both specific performance and damages when specific performance will not make the injured party whole. *Bush v. Cathey*, 598 S.W.2d 777, 783 (Tenn. Ct. App. 1979). As Professor Corbin has explained:

> A decree for specific performance seldom brings about performance within the time that the contract requires. In this respect, such a decree is nearly always a decree for less than exact and complete performance. For the partial breach involved in the delay or in other existing non-performance, money damages will be awarded along with the decree for specific performance.

12 CORBIN ON CONTRACTS § 1160, at 254-55. Thus, for example, a court may properly decree specific performance of a contract to convey real property and also award damages for delay in occupancy. *330 Michigan Ave., Inc. v. Cambridge Hotel, Inc.*, 183 So. 2d 725, 728 (Fla. Ct. App. 1966); *Cohn v. Mezzacappa Bros., Inc.*, 547 N.Y.S.2d 367, 369 (App. Div. 1989).

**B.**

The trial court determined that the property owners were entitled to specific performance of Mr. Shahan's agreement to provide adequate roads for ingress and egress to their property. While the property owners do not take issue with the trial court's decision to grant them specific performance, they assert that specific performance alone is insufficient to make them whole. We have determined that their evidence of damages is far too speculative to warrant an award of damages in addition to specific performance.

As the parties seeking damages, the property owners must prove that specific performance alone is not an adequate remedy. They must also prove the nature and amount of their damages, *Hogan v. Coyne Int'l Enters. Corp.*, 996 S.W.2d 195, 206 (Tenn. Ct. App. 1998). While their proof need not be mathematically precise, it should be reasonably certain enough to enable a reasonable trier-of-fact to make a fair and reasonable assessment of the damages. *Baker v. Hooper*, 50 S.W.3d 463, 470 (Tenn. Ct. App. 2001); *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d 849,

857 (Tenn. Ct. App. 1999); *Wachtel v. Western Sizzlin Corp.*, 986 S.W.2d 2, 6 (Tenn. Ct. App. 1998).

The Peckinpaughs and the Grahams assert that they are entitled to monetary damages because they lost the beneficial use of their property due to the substandard roads and Mr. Shahan's failure to obtain planning commission approval for the subdivision. They equate their damages with the interest they would have earned on the money they used to purchase their property had they invested the funds at eight percent as well as the expenses they incurred after purchasing the property.[9] We find these calculations unrelated to the actual losses, if any, that the parties actually incurred because of Mr. Shahan's conduct.

The Grahams purchased their 9.25-acre tract because they wanted access to the back of another piece of property they owned. After they decided to build a house on the property, they discovered that they would be unable to obtain a building permit because the subdivision was unimproved. They attempted to sell the property in 1999, but potential buyers lost interest after they discovered that they would be unable to obtain a building permit. They introduced no evidence regarding the diminished value of the property, how much their offering price was, the number of potential buyers of the property, or whether they received counter-offers for the property and, if so, the amount of these counter-offers. More importantly, they presented no evidence that the amount they will be able to sell the property for after Mr. Shahan improves the roads and obtains approval of the subdivision will not adequately compensate them.

The Peckinpaughs purchased three tracts from Mr. Shahan. They obtained a building permit to construct their home on the middle lot but had not applied for building permits for their two remaining lots. In addition, the Peckinpaughs had not attempted to sell any of their property, even though they planned at some point to sell the two undeveloped lots to fund their retirement. In light of this proof, the Peckinpaughs have failed to prove that they have actually been harmed by Mr. Shahan's failure to construct adequate roads or to obtain approval of his subdivision.

## VI.

We affirm the judgment as modified herein and remand the case to the trial court with directions to enter an order amending its final decree to require Mr. Shahan to bring Radio Beam Lane and Deer Creek Lane up to Franklin County's current standards for new roads. We tax the costs of this appeal to Earl M. Shahan for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., J.

---

[9] Their lawyer included property taxes in his damage calculations. For the Peckinpaughs, the attorney calculated the total amount of lost interest from October 1994 to January 2002 to be $10,540 plus $4,444 in real estate taxes, for a total of $14,984 in damages. For the Grahams, he calculated $7,906 in lost interest, $1,200 for constructing a well, plus $572 in real estate taxes, for a total of $9,678 in damages.